434 So.2d 597 (1983)
Glenn VASCOCU, Plaintiff-Appellant,
v.
Gerald SINGLETARY, et al., Defendants-Appellees.
No. 83-70.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*598 Thomas & Dunahoe, Edwin Dunahoe, Natchitoches, for plaintiff-appellant.
Mayer, Smith & Roberts, Mark A. Goodwin, Shreveport, Don W. Martin, Leesville, for defendants-appellees.
Before FORET, CUTRER and LABORDE, JJ.
CUTRER, Judge.
The issue presented on appeal is whether the policy of insurance, issued by Western World Insurance Co., Inc., to Roger Mayo and Gerald Singletary, provided coverage for the tortious conduct of Singletary.
Glenn Vascocu filed suit against Mayo and Singletary seeking damages for injuries incurred when he was struck in the left leg and foot by pellets from a shotgun fired by Singletary. The shooting occurred during a barroom brawl on October 25, 1979, at a lounge known as the "Cajun Club" located in Natchitoches Parish, Louisiana. Mayo and Singletary were partners in the operation of the lounge. Western World Insurance Co., Inc. (Western World) issued a liability policy to the partners. Western World was also made a defendant. Mayo filed a third party demand against Western World.
Western World filed a motion for summary judgment on the ground that the policy issued to Mayo and Singletary contained an applicable exclusionary clause. The trial court granted the motion for summary judgment dismissing the principal demand and Mayo's third party demand against Western World. Vascocu appealed the dismissal of his demand against Western World; the trial court judgment was reversed and the suit was remanded for trial on the merits.[1]
After trial on the merits the trial judge rendered judgment in favor of Vascocu and against Roger Mayo and Gerald Singletary for the sum of $104,409.97. The trial court concluded that Western World's policy provided no coverage and dismissed Vascocu's suit against Western. Vascocu appeals and we affirm.
The policy's exclusionary provision that is at the center of this appeal reads as follows:
"In consideration of the reduced rate of premium charges, it is understood and agreed that this policy excludes claims arising out of assault and battery, whether caused by or at the instigation of, or at the direction of, or omission by the insured, his employees, patrons or any cause whatsoever."

It is the contention of Vascocu that the discharge of the shotgun by Singletary was accidental and was not a "battery" within the provisions of the exclusionary clause above.
This record contains the testimony of numerous witnesses who were present and participating in the typical barroom brawl. The testimony, as is usual in this type of case, is conflicting as to the actions of the various participating parties. The trial judge gave written reasons reflecting his findings of fact. We quote, in part, his findings of fact and conclusion as follows:

"This court further finds, as a matter of fact, that on October 26, 1979, at approximately 9:00 to 9:30 p.m., Glenn Vascocu, the plaintiff in this action, went with six or seven of his friends to the *599 `Cajun Club' for the purpose of a bachelor party get-together for one [of] his friends in the group. When they arrived at the `Cajun Club' the plaintiff entered the front door of the club, walked to the bar, purchased a drink, then exited the main portion of the club which included the bar and dance floor and went into an adjoining pool room where he engaged in one or more games of pool. While in this adjoining room, a drunk patron by the name of Roberts became upset when the bar maid removed his hatchet from his possession. (The bar maid spoke very matter-of-factly about this incident and in such a manner as to lead the court to conclude that possession of a hand ax on one's person while patronizing the `Cajun Club," if it were indeed out of the ordinary, certainly did not arise to the stature of a noteworthy or unusual event.) This drunk patron, thinking that one of the plaintiff's friends had disarmed him, attempted to attack the young man whom he thought had taken his hatchet and in so doing pushed and grabbed at the young man then fell on the floor and bloodied his nose. While this scuffle was taking place the plaintiff, Vascocu, exited the pool room and came back into the main bar area and was peacefully standing by, watching the scuffle and making no attempt whatsoever to get into it when the defendant, Singletary, with no provocation whatsoever from the plaintiff, slipped up behind the plaintiff and hit him with a pool stick with such a force that it knocked the plaintiff from his feet and onto the floor and caused the plaintiff's eardrum to burst and inflicted a laceration which required twenty-five stitches to close. This unprovoked attack on the unarmed and unsuspecting plaintiff caused a barroom brawl to erupt between the five or six employees of the Cajun Club and five or six friends of Vascocu. When the plaintiff got up from the floor where he had been knocked by Singletary, he struck back at Singletary knocking him down and then attempted to get out of the club. In order to have gone out the front door, he would have had to fight his way through the main portion of the brawl and go over or around tables and chairs, so he chose to go out a rear exit. On his way toward the rear, he got into another fight with Singletary, which the court specifically finds to have been instigated by Singletary, and was getting the best of Singletary, who no longer had the large pool stick to give him an advantage. Singletary, finding himself to not only be on the short end of the stick, but indeed to be totally without the stick, armed himself again, but this time with a deadly weapon being a twelve gauge shotgun which was behind the bar. The shotgun which Singletary armed himself with was a single-barrel hammer action shotgun which was cocked by Singletary who then proceeded to shoot the plaintiff in the leg and foot causing severe and permanently disabling injuries. The court rejects as untruthful the testimony of Singletary that he was trying to shoot the floor and scare Vascocu and finds, as a matter of fact, that the defendant, Singletary, fully intended both the act of shooting and the consequences that ultimately resulted therefrom, that is the inflicting of grievous injuries on the plaintiff, Vascocu.

"Taking the issue of whether or not the plaintiff is entitled to recover from Singletary and Mayo first, the court is convinced beyond any doubt that the only aggressor involved in this incident was Gerald Singletary, who first attacked the plaintiff without provocation by hitting him with a pool stick with such force that it burst his eardrum and split his head open to such an extent that it took twenty-five stitches to close up the laceration. Vascocu then got up from the floor and gave Singletary a whipping, not with a chair or pool stick or other weapon, but with his hands. Singletary then took it upon himself to get the advantage again and armed himself with a shotgun and intentionally shot the plaintiff and intentionally inflicted serious injury on the plaintiff. Singletary was charged in criminal court with aggravated battery and eventually entered a plea of guilty to *600 a charge of simple battery. Singletary was represented by counsel at the time he entered his plea and admitted to the battery."
The trial judge, citing the case of Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir. 1975), found that the exclusionary clause of Western's policy was applicable as "Singletary intended both the act and the result."
We have thoroughly examined the record and we find that the trial judge was not clearly wrong in his evaluation of the evidence, findings of fact and conclusions.
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).
The case at hand is very similar to the case of Monk v. Veillon. In Monk, plaintiff was shot in the leg by a bouncer at the Sportsman's Paradise Club in Calcasieu Parish. Plaintiff sued the bouncer, the owners and Western World Insurance Company, liability insurer of the establishment. The policy contained an exclusionary provision almost identical to the clause in the instant case. The plaintiff contended that the bouncer had no intention of shooting him thus the exclusionary clause did not apply. This court, after quoting the factual findings of the trial court which had found the shooting was intentional and constituted a battery, stated as follows:
"We agree with the factual findings by the trial court. The record amply supports the conclusion that the force employed was excessive and that the shooting was intentional rather than unintentional. The historic distinction between assault and battery and negligence is that the former is intentional; the latter is unintentional. Shehee v. Aetna Casualty & Surety Co., 122 F.Supp. 1 (W.D.La. 1954)."
See also: Tobin v. Williams, 396 So.2d 562 (La.App. 3rd Cir.1981).
The same reasoning applies to the case at hand. The record amply supports the trial court's conclusion that the actions of Singletary in his shooting Vascocu was intentional and constituted a battery. As such, the exclusionary clause of Western World's policy is applicable and the trial court correctly dismissed Vascocu's suit as to this defendant.
For these reasons, the judgment of the trial court is affirmed. Glenn Vascocu, plaintiff-appellant, is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Vascocu v. Singletary, 404 So.2d 301 (La. App. 3rd Cir.1981), writ den., 409 So.2d 676 (La. 1981).