527 So.2d 524 (1988)
Wayne E. BARTON, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
No. 87-511.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
Richard Starling, Pineville, for plaintiff-appellant.
Provosty, Sadler & Delaunay (William Delaunay), Alexandria, for defendant-appellee.
Before GUIDRY, FORET and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, Wayne E. Barton, filed suit against Kayla Morrison for injuries sustained at her home, and against Allstate Insurance Company (Allstate) under a homeowner's policy. Barton suffered injuries when he was shot in the leg by Kayla Morrison's estranged husband, James W. Morrison, Jr. A trial on the merits was held and a directed verdict was granted on behalf of Kayla Morrison; however, Allstate remained as the sole defendant against whom liability was alleged. (The Allstate homeowner's policy insured both James and Kayla Morrison).
Allstate's defense was that the acts of Morrison were intentional and thus not covered under the policy which contained the following exclusion:
"We do not cover any bodily injury which may reasonably be expected to result from an intentional act of an insured person or which is intended by an insured person."
After deliberation, the jury answered "yes" to the interrogatory on the special verdict form which asked: "Did James Morrison intentionally shoot Wayne Barton?"; Allstate was thus absolved of liability.
Barton filed a Motion for a JNOV and new trial. The JNOV was denied, however, the trial judge granted a new trial stating that he felt that Morrison's actions should not have been found to be intentional. Allstate then filed for supervisory writs with this court. The writs were granted and made peremptory as we found that the trial court abused its discretion in *525 granting the new trial. Plaintiff then applied to the Louisiana Supreme Court for writs of certiorari, which were denied. Plaintiff now appeals the jury's verdict that the intentional act exclusion was applicable. Plaintiff's appeal also requests that damages be awarded if we find the exclusion is inapplicable. We affirm the jury's verdict.

FACTS
James and Kayla Morrison were married on July 19, 1980. Their relationship was an "on again, off again" one. They were never judicially separated or divorced, but the two were not living together at the time of this incident. Kayla continued living in their former home, a trailer located in the Haphazard Trailer Park in Tioga. Wayne Barton began dating Kayla in February, 1985. On March 2, 1985, Wayne and Kayla had made plans to go to a concert at the Rapides Coliseum. However, Wayne decided to go out drinking with some friends at the "Back Porch Saloon" instead. Kayla picked Wayne up at the bar at about 7:30 p.m. and the two went back to her trailer. They were in bed when they were awakened by the telephone at about 4:00 a.m. The phone rang, but no one spoke to Kayla when she answered. This happened again a few minutes later. A short time later James, who had been out drinking at "The Lighthouse" and "Red Beard's," knocked on the trailer door and yelled for Kayla to let him in. Kayla exclaimed: "Oh, shit," and told Wayne to go into the bathroom. James continued to request admittance, but Kayla pretended not to be home. She also called the police and told them that there may be trouble. James then, somehow, broke into the trailer. He walked into the bedroom and asked where the tall, lanky, son-of-a-bitch was. Kayla responded that no one else was there. James then apparently slapped Kayla a few times and pushed her around. He then noticed that the bathroom door was closed. After kicking the door once, James whipped out his .357 Magnum revolver and shot into the door. Wayne then screamed that he had been shot.
The testimony is unclear as to exactly what happened next. It is apparent that several things did happen in a short time span. James shot the gun three more times, once at a microwave oven and at least once into the bathroom ceiling. Kayla apparently was able to get her hand on the gun at some point in an attempt to protect herself and Wayne. A neighbor, Thelma Newton, testified that she heard Kayla cry "Please don't shoot him, Jimmy," then heard a shot, and then heard more shots along with Kayla crying: "Don't shoot me, Jimmy." At some point Wayne opened the bathroom door and said: "Get me to a doctor." James then held the gun to Wayne's head and threatened to blow his brains out. Wayne also claims to have gotten his hand on the gun, struggled with James, and fell into the bathtub. James exited the bathroom, held the gun to Kayla's head and threatened to blow her brains out. Also during the melee, Kayla claims to have answered the telephone two times (one call was from her mother and one from her sister). James went outside and hid the gun under his Corvette. The police then arrived to investigate the incident. Wayne Barton received two bullet wounds in his leg. None of the parties, witnesses, or attorneys seem to know if he was shot twice or if one bullet shattered upon striking the bathroom door and entered his leg in two different places.

INTENTIONAL TORTS
Exclusionary clauses in insurance contracts which deny coverage for injuries caused by an intentional act of the insured have been the subject of much litigation in this state. The intended purpose of such clauses is to prevent extension to the insured of a license to commit whatever wanton and malicious acts he wishes, yet still fall under the coverage of his insurance policy. Sabri v. State Farm Fire and Casualty Co., 488 So.2d 362 (La.App.3d Cir.), writ not considered, 493 So.2d 630 (La.1986). Such an exception or exclusion has been interpreted to mean that liability is not precluded for an expected or intended act, but is precluded for an expected or intended injury. Thus when the act is intentional, but the injury is not, the exclusionary *526 clause is not applicable. Sabri, 488 So.2d at 365.
"An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to the result."
Pique v. Saia, 450 So.2d 654, 655 (La.1984). An explanation of what constitutes an intentional act causing an intentional injury is given in W. Prosser, Law of Torts § 8 (4th Ed.1971):
"An anarchist who throws a bomb into the royal carriage may actually wish to kill no one but the king; but since he knows that the death of others in the carriage is a necessary and almost inevitable incident to that end, and nevertheless goes ahead with that deed it must be said that he intends to kill them. The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it."
We have found numerous cases involving plaintiffs that have been shot by defendants where the defendants' acts have been deemed intentional. Vascocu v. Singletary, 434 So.2d 597 (La.App.3d Cir. 1983); Tobin v. Williams, 396 So.2d 562 (La.App. 3d Cir.1981); Monk v. Veillon, 312 So.2d 377 (La.App.3d Cir.1975); Brasseaux v. Girouard, 269 So.2d 590 (La.App. 3d Cir.1972), writ denied, 271 So.2d 262 (La.1973); Horde v. Foucha, 396 So.2d 441 (La.App. 4th Cir.), writ denied, 401 So.2d 976 (La.1981); Freeman v. Bell, 366 So.2d 197 (La.App. 2d Cir.), writ denied, 369 So. 2d 151 (La.1979). Most of these cases have involved claims that the shootings were accidental or in self defense. But the courts have found that the aggressive act of pulling out a loaded gun and firing it supports the conclusion that the defendant intended the result that was almost certain to occur. Sabri is one of the few cases that has held a shooting to not be an intentional act. In that case, a father shot his daughter as she entered the family home. It was dark and he mistook her for a burglar. The court found that although the father intended to fire the gun, he did not intend to injure his daughter who was entering the home to seek refuge after a fight with her former husband.
In the present matter, plaintiff contends that James Morrison's intent in firing the gun at the door was to open the door and not to injure plaintiff. He also asserts that the first shot was the only one to hit plaintiff and thus Morrison's intent in firing any of the three subsequent shots is irrelevant. The jury considered all of the evidence presented at trial and concluded that James Morrison's acts were intentional. Although the trial judge was not willing to grant plaintiff's requested JNOV, he indicated in his reasons for granting a new trial that he felt that the jury's finding that Morrison's acts were intentional was erroneous. As we have already mentioned, this court found that the trial court's decision to grant a new trial was an abuse of discretion.
After a careful review of the record, we conclude that the jury correctly found that Morrison intended to shoot and injure Wayne Barton. Although Barton was in the bathroom behind a closed door, Morrison knew that someone was in the bathroom. Morrison intentionally fired the gun at the door. He should have been well aware that by firing the gun into the door, it was substantially certain that the person behind the door would be injured. The jury correctly found that Morrison intentionally shot Wayne Barton. We thus hold that the intentional act exclusion of the Allstate policy is applicable and precludes any recovery by plaintiff from Allstate. Since we have found Allstate to be free from liability, we will not consider Barton's request for damages.
*527 For the foregoing reasons, the judgment by the trial court is affirmed. Costs of this appeal are taxed to plaintiff, Wayne E. Barton.
AFFIRMED.