**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff and Appellee,**

v.

**Brandon GEARY and Brad Edwards, Defendants and Appellant.**

No. 920766–CA.

Court of Appeals of Utah.

Jan. 26, 1994.

---

9. Nordfelt resigned his membership in FOP on October 3, 1991.

Robert A. Echard (argued), Robert A. Echard & Associates, Ogden, for defendants and appellants.

Lowell V. Smith, Daniel D. Andersen (argued), Hanson, Epperson & Smith, Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and GARFF,[1] JJ.

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78-3-24(10) (1992).

## AMENDED OPINION [2]

GREENWOOD, Judge:

Appellant Brandon Geary (Geary) appeals the district court's grant of summary judgment in favor of Appellee State Farm Fire & Casualty Company (State Farm). We affirm.

## FACTS

On September 4, 1989, Brad Edwards (Edwards) and his friend, Christopher Orchard (Orchard), were driving towards Syracuse, Utah, intending to dove hunt in that area. While stopped at a convenience store, Edwards and Orchard were approached by Geary and a friend. Apparently, the encounter became confrontational. An automobile chase ensued, with Geary and his friend pursuing Edwards and Orchard. At one point, Edwards stopped his vehicle and told Geary that he would shoot him if Geary did not leave him alone. Edwards then drove away but Geary continued to follow. After further chasing, the two vehicles stopped near an intersection of two dirt roads in the Syracuse area. Edwards instructed Orchard to load the shotgun located in the front seat of the car. After Orchard loaded the shotgun, Edwards grabbed it and intentionally pointed it in the direction of Geary. Edwards told Geary, "Leave me alone or I'll shoot you." Geary said, "You ain't going to shoot me" and started laughing. Thereafter, Edwards intentionally fired the shotgun once in Geary's direction; the blast struck the ground near Geary's vehicle. Edwards then intentionally fired a second shot, again in Geary's direction, which struck him in the head, neck, and chest with approximately 132 pellets.

As a result of this incident, Edwards was arrested and charged with attempted homicide. He pleaded guilty to a lesser charge of aggravated assault, a third degree felony. Based on his guilty plea, the district court sentenced Edwards to prison for zero to five years.

2. This amended opinion replaces the opinion in Case No. 920766-CA issued on January 14, 1994, and corrects a clerical error in the earlier opinion which had reversed the designations of counsel for appellant and appellee.

In a subsequent civil lawsuit, filed on May 8, 1990, Geary sought money damages from Edwards for the injuries he inflicted with the shotgun blast.[3] Four months later, in September, 1990, Edwards's insurer, State Farm, filed a declaratory action seeking a judicial determination as to whether it had a duty to defend Edwards or provide coverage under Edwards's homeowners policy.[4] State Farm contended that the policy's exclusionary clause relieved it of any duty to defend or provide coverage for Edwards because he intentionally shot Geary.

In March 1992, State Farm filed a Motion for Summary Judgment in the declaratory action and Geary filed a motion in opposition.[5] Subsequently, on July 8, 1992, the trial court granted State Farm's Motion for Summary Judgment in the declaratory action. In its ruling, the trial court stated that there were no genuine issues of material fact and that there was no coverage under Edwards's policy because he intentionally shot and injured Geary. The trial court relied on Edwards's guilty plea to aggravated assault to support its finding that Edwards intentionally injured Geary. Geary appeals the trial court's grant of summary judgment, arguing (1) that it improperly used Edwards's guilty plea to establish his intent to injure Geary,[6] and (2) that the question of whether Edwards intended to injure Geary is a genuine issue of material fact.

## ISSUE ON APPEAL

The sole issue we address on appeal is whether the trial court correctly granted summary judgment by ruling that as a matter of law State Farm had no duty under Edwards's homeowners policy to provide coverage for Geary's injuries.

## STANDARD OF REVIEW

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). As entitlement to summary judgment is a question of law, we need give no deference to the trial court's determination of the issues. *Id.* "However, we may affirm a grant of summary judgment on any ground available to the trial court, even if it is one not relied on below." *Id.* (citing *Hill v. Seattle First Nat'l Bank*, 827 P.2d 241, 246 (Utah 1992)); *accord Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).

## ANALYSIS

The analysis of this case requires a two-step process. First, we must determine whether the shooting incident was an "occurrence" under Edwards's homeowners policy. Second, if the shooting was an "occurrence," we must next determine whether the policy's

---

3. The civil suit between Geary and Edwards went to trial on October 21, 1992. On the issue of negligence, the jury returned a verdict finding that Edwards was negligent and that his negligence constituted 90 percent of the fault. The other 10 percent of fault was allocated to Geary (7%) and to Orchard (3%). The jury awarded Geary special damages of $36,539.91 and general damages of $30,000.

4. Actually, the homeowners policy was in the name of Edwards's parents, with whom he resided at the time of the accident. However, for the sake of brevity, we refer to the homeowners policy as if it were in the name of Brad Edwards.

5. Geary responded to State Farm's Motion for Summary Judgment because Edwards had failed to respond to State Farm's Complaint for Declaratory Action or its Motion for Summary Judgment. Geary had filed with the court a Motion to Intervene in the declaratory action on behalf of Edwards, but the court did not rule on that motion. Nonetheless, Geary appeared before the court and answered the Complaint for Declaratory Action and also filed the Motion in Opposition to State Farm's Motion for Summary Judgment.

6. An element of aggravated assault, to which Edwards pleaded guilty, is to "intentionally cause[] serious bodily injury to another." Utah Code Ann. § 76-5-103 (1990). In Edwards's deposition, taken in preparation for the civil suit between Edwards and Geary, Edwards said that he intended only to frighten, not injure, Geary. This testimony from Edwards failed to persuade the trial court which stated, "Mr. Edwards plead[ed] guilty to intentionally injuring Mr. Geary. He cannot now explain away that plea." As we resolve this case using the language of Edwards's homeowners policy and the undisputed fact that Edwards intentionally fired the shotgun, we do not address the trial court's reliance on Edwards's guilty plea to establish his intent to injure Geary.

exclusionary clause applies. *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734, 737 (1989).

### Was There an "Occurrence" Under the Policy?

■ To determine whether Edwards's homeowners policy provides coverage, we turn to the express language of the policy. It states, under Section II—Liability Coverages, that State Farm will pay "[i]f a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* ... caused by an *occurrence.*" The policy defines an "occurrence" as "an accident, including exposure to conditions, which results in ... bodily injury." Therefore, an "occurrence" covered by the policy includes only those injuries to property or person resulting from an "accident," and not an intentional occurrence.

It is undisputed that Edwards intentionally pulled the trigger on the shotgun that injured Geary. However, the parties dispute whether Edwards intentionally or accidentally injured Geary. Seemingly, the resolution of this "occurrence" issue hinges on whether we focus on either the shooting or the injury as accidental or intentional. For the reasons explained below, we are persuaded by the case law which focuses on the accidental or intentional nature of the shooting, rather than the ensuing injury.

The Utah Supreme Court, defining the words "accident" or "accidental" as used in an accidental death insurance policy, stated that

> "[t]he word is descriptive of means which produce effects which are not their natural and probable consequences.... An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds."

*Hoffman v. Life Ins. Co. of N. Am.*, 669 P.2d 410, 415 (Utah 1983) (quoting *Richards v. Standard Accident Ins. Co.*, 58 Utah 622, 636, 200 P. 1017, 1023 (1921)). Although *Hoffman* focused on whether the death of the insured was accidental, it noted that injury or death is not accidental when a gun is used, coupled with threats of death or serious bodily injury. *Id.* at 418. While instructive, *Hoffman* fails to resolve this issue because it involved an accidental death policy, not a homeowners policy. Furthermore, *Hoffman* focused on whether the insured's death was accidental rather than on whether the insured's intentional shooting of a gun was an "occurrence." Thus, we look to case law from other jurisdictions to provide additional insight.

The Washington Court of Appeals, in a case involving a similar definition of "occurrence," [7] adopted the following rule:

> "[T]o recover under a policy insuring against death or injury by accidental means, (1) it is not enough that the *result* was unusual, unexpected or unforeseen, but it must appear that the *means* was accidental; and (2) *accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.*"

*Safeco Ins. Co. of Am. v. Dotts*, 38 Wash.App. 382, 685 P.2d 632, 633–34 (1984) (quoting *Johnson v. Business Men's Assurance Co. of Am.*, 38 Wash.2d 245, 228 P.2d 760 (1951)).

In *Safeco*, the insured slapped another man in the face to get his attention. Later that day, the man who had been struck lapsed into a coma and died five days later. At the ensuing criminal trial for manslaughter and assault, the insured testified he did not intend to hurt the deceased nor was he angry with him. The personal representative of the deceased's estate subsequently brought a civil suit against the insured to recover under a mobile homeowners liability policy. In ruling that there was no insurance coverage, the Washington appellate court fo-

---

7. The policy defined "occurrence" as "[a]n accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." *Safeco Ins. Co. of Am. v. Dotts*, 38 Wash.App. 382, 685 P.2d 632, 633 (1984).

cused on the deliberate act of slapping the deceased in the face. The court noted that it was undisputed that the insured deliberately slapped the victim and that he "subjectively did not intend or expect the 'result' of death." *Id.* 685 P.2d at 634. Nonetheless, the court ruled that there was no "occurrence" or "accident" to which coverage would apply because of the court's rule that "an accident is 'never present' when a deliberate act is performed absent an 'independent' unforeseen act." *Id.* at 635.

In another jurisdiction, the Hawaii Supreme Court found no "occurrence"[8] under a homeowners policy where an individual fired a rifle in the direction of another individual, intending only to frighten him, but actually shot him in the leg. *Hawaiian Ins. & Guar. Co. v. Blanco,* 72 Haw. 9, 804 P.2d 876, 881 (1990). In ruling that the insurance company had no duty to defend or provide coverage under the policy, the Hawaii Supreme Court stated:

> [W]e do not see how it logically can be said that … the injury … was the result of an accident. Given the best possible interpretation, Garcia fired the rifle in Saturnino's direction intending to frighten him. That physical injury might result from such an action is certainly something which a reasonable man in Garcia's position should have anticipated and expected.

*Id.*

■ We find the reasoning of these cases persuasive and apply it to the facts before us.

It is undisputed that Edwards intentionally pulled the trigger on the shotgun. While the parties may dispute whether Edwards subjectively intended to injure Geary, that question is irrelevant to our analysis of whether there was an "occurrence" under the policy. Because Edwards intentionally fired the shotgun, his act of pulling the trigger qualifies as a "deliberate act." Hence, we conclude that Edwards's homeowners insurance policy was not designed to include as an "occurrence" an intentional shotgun blast without any independent intervening act, even if the resulting injury was unintended.[9] Therefore, because Edwards intentionally, not accidentally, aimed and shot the shotgun, we conclude there was no "occurrence" under Edwards's homeowners policy, despite the perhaps unintended resulting injury to Geary.

## Does the Exclusionary Provision Apply?

■ Assuming, however, that the shooting incident did qualify as an "occurrence," we believe the incident would also be excluded from coverage under the policy's exclusionary provision.

Preliminarily, we note that the "intended purpose of [exclusion] clauses is to prevent extension to the insured of a license to commit whatever wanton and malicious acts he [or she] wishes, yet still fall under the coverage of [the] insurance policy." *Barton v. Allstate Ins. Co.,* 527 So.2d 524, 525 (La.App. 1988) (citing *Sabri v. State Farm Fire &*

---

**8.** The insurance policy's definition of "occurrence" was identical to the definition in Edwards's policy: " 'occurrence' means an accident, including exposure to conditions, which results … in … bodily injury." *Hawaiian Ins. & Guar. Co. v. Blanco,* 72 Haw. 9, 804 P.2d 876, 878 (1990).

**9.** The phenomenon of aiming and firing a gun at a specific target, only to hit something unintended is not new. The following excerpt from Mark Twain's *Roughing It* is illustrative:

George Bemis was our fellow-traveler. We had never seen him before. He wore in his belt an old original "Allen" revolver, such as irreverent people called a "pepper-box." Simply drawing the trigger back, cocked and fired the pistol. As the trigger came back, the hammer would begin to rise and the barrel to turn over, and presently down would drop the hammer, and away would speed the ball. To aim along the turning barrel and hit the thing aimed at was a feat which was probably never done with an "Allen" in the world. But George's was a reliable weapon, nevertheless, because, as one of the stage-drivers afterward said, "If she didn't get what she went after, she would fetch something else." And so she did. She went after a deuce of spades nailed against a tree, once, and fetched a mule standing about thirty yards to the left of it. Bemis did not want the mule; but the owner came out with a double-barreled shotgun and persuaded him to buy it, anyhow. It was a cheerful weapon—the "Allen." Sometimes all its six barrels would go off at once, and then there was no safe place in all the region round about, but behind it.

Mark Twain, *Roughing It* 5–6 (Book-of-the-Month Club 1992) (1872).

*Casualty Co.*, 488 So.2d 362 (La.App.1986)); *see also Swindal v. Prudential Property & Casualty Ins. Co.*, 599 So.2d 1314, 1317 (Fla. App.1992) ("[I]nsurance coverage should not, as a matter of general public policy, protect an insured from the 'known and necessary consequences' of his own criminal conduct.").

In the present case, the exclusionary clause of Edwards's policy states that "[c]overage L [Personal Liability] ... do[es] not apply to ... bodily injury ... which is either *expected or intended* by an insured." Geary argues that Edwards's insurance policy covers the shooting incident because although Edwards intended to shoot the shotgun, he neither expected nor intended to harm Geary. We note that none of the cases cited by Geary to support this position are from Utah courts, and thus do not control our decision.[10]

We are persuaded that under the policy's exclusionary clause, Edwards's intent to injure Geary can be inferred as a matter of law.[11] Many jurisdictions have recognized that the intent to injure, especially when guns are involved, can be inferred as a matter of law based on the nature of the act involved and the accompanying reasonable foreseeability of harm. *See, e.g., American Family Mut. Ins. Co v. Wubbena*, 496 N.W.2d 783, 784 (Iowa App.1992) ("Intent may be inferred from the nature of the act

and the accompanying reasonable foreseeability of harm."); *Barton*, 527 So.2d at 526 ("[T]he aggressive act of pulling out a loaded gun and firing it supports the conclusion that the defendant intended the result that was almost certain to occur."); *Allstate Ins. Co. v. Freeman*, 160 Mich.App. 349, 408 N.W.2d 153, 156 (1987), *aff'd*, 432 Mich. 656, 443 N.W.2d 734 (1989) ("[S]ome acts ... 'are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law.' "); *Auto–Owners Ins. Co. v. Smith*, 376 N.W.2d 506, 509 (Minn.App.1985) ("[I]ntent to injure should be inferred because the insureds intentionally prepared themselves to inflict serious injury by carrying loaded guns."); *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661, 664 (Mo.App.1982) ("Intent to harm is inferred if the natural and probable consequences of an act are to produce harm."). One jurisdiction has gone so far as to hold that all intentional acts are properly excluded from coverage by the exclusionary clause of a homeowners policy, even if there is no specific intent to injure. *Landis v. Allstate Ins. Co.*, 546 So.2d 1051, 1053 (Fla.1989).

We are convinced that the intentional firing of a gun in the direction of an individual qualifies as an act which carries with it the reasonable foreseeability of harm, from

---

**10.** Three of the cases cited by Geary analyze exclusion clauses that are materially different and more restrictive than the clause in this case. *See Allstate Ins. Co. v. Steinemer*, 723 F.2d 873, 875 (11th Cir.1984); *Clark v. Allstate Ins. Co.*, 22 Ariz.App. 601, 602, 529 P.2d 1195, 1196 (1975); *Safeco Ins. Co. v. McGrath*, 63 Wash.App. 170, 817 P.2d 861, 863 (1991). We believe that this difference in policy language diminishes the effectiveness of these cases to resolve the issues in this case. As to the other cases cited by Geary, while we recognize that several other jurisdictions have adopted the positions espoused therein, we decline to follow them. Rather, we believe that public policy and logic support, to a greater degree, the position that we adopt today.

**11.** Because we hold that Edwards's intent to injure Geary can be inferred as a matter of law, we do not base our decision on an analysis of whether Edwards "expected" to injure Geary. Nevertheless, an argument could be made that Edwards reasonably expected to injure Geary. We note the case of *American Family Mutual Insurance Co. v. Wubbena*, 496 N.W.2d 783 (Iowa

App.1992), which stated that "[t]he term 'expected' as used in the exclusionary clause, 'denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions.' " *Id.* at 784 (citing *Weber v. IMT Ins. Co.*, 462 N.W.2d 283, 287 (Iowa 1990)); *see also Swindal v. Prudential*, 599 So.2d 1314, 1317–18 (Fla.App.1992) ("[W]here a reasonable person would believe that a particular result is substantially certain to follow, the person will be treated as if the result was intended.").

Although Edwards may have truly intended subjectively to only frighten Geary, the fact remains that Edwards expressed his intent to shoot Geary and then twice fired a loaded shotgun in Geary's direction. Edward's intentional firing of the shotgun in Geary's direction rises, we believe, to the level of an act which contains a "substantial probability that certain consequences will result." Accordingly, we think it reasonably follows that Edwards "expected" to injure Geary, and thus the homeowners policy would not provide coverage under this analysis either.

which we may infer the intent to injure.[12] Edwards told Geary to leave him alone or else he would shoot him and then took a loaded shotgun and fired it twice in Geary's direction. Hence, we hold that as a matter of law Edwards intended to harm Geary. Consequently, the insurance policy's exclusion clause effectively denies coverage to Geary in this case. The trial court was therefore correct in granting summary judgment because there is no material question of fact as to whether Edwards intended to harm Geary because Edwards's intent to injure Geary can be inferred from the circumstances, as a matter of law.[13]

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of State Farm because there are no genuine issues of material fact. Additionally, we conclude that as a matter of law Edwards's homeowners policy does not provide coverage in this instance. First, we determine that the intentional firing of a shotgun at or near an individual does not constitute an "occurrence" under this policy. Second, even if it does amount to an "occurrence," the policy's exclusionary clause denies coverage because Edwards's intent to injure Geary can be inferred, as a matter of law, from Edwards's intentional act of stating that he would shoot Geary and then firing the shotgun in Geary's direction. We therefore affirm the trial court's judgment.

JACKSON and GARFF, JJ., concur.

---

12. While our decision does not hinge on the type of weapon used, we note that a rifle or even a handgun is designed to shoot a single bullet with some moderate degree of accuracy while a shotgun is designed to scatter its pellets, without concern for pinpoint accuracy, over a broader target area. Thus, the likelihood that one or several of the numerous pellets expelled by a single shotgun blast will hit something unintended is much greater than a single bullet from a rifle or handgun.

In the present case, the fact that Geary was hit in the head, neck, and chest with not one or two errant pellets but approximately 132 pellets, further supports the argument that Edwards's intent can be inferred from the circumstances.

13. Although the trial court based its ruling of intent on Edwards's plea of guilty to aggravated assault, we may affirm a trial court's decision on any basis. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).