**FIRE INSURANCE EXCHANGE, Plaintiff and Appellee,**

v.

**Lynal ROSENBERG, Defendant and Appellant.**

**No. 960479–CA.**

Court of Appeals of Utah.

Jan. 9, 1997.

Christopher L. Shaw and Sharon S. Sipes, Ogden, for Defendant–Appellant.

Lewis B. Quigley and J. Benjamin Tyler, Salt Lake City, for Plaintiff–Appellee.

Before DAVIS, P.J., and JACKSON, and ORME, JJ.

## OPINION

DAVIS, Presiding Judge:

This is an appeal from a summary judgment entered below in favor of plaintiff Fire Insurance Exchange (Fire Insurance) in a declaratory action brought by plaintiff. We affirm.

## FACTS [1]

On July 26, 1993, defendant observed his neighbor, Brian Black, shooting bottle rockets across defendant's property. In retaliation for what he deemed a childish act, defendant tossed onto Black's front porch a lighted cherry bomb, which landed behind Black. At this time, Black's wife, Beverly Devoy, came out onto the porch from inside the house and picked up the cherry bomb. The cherry bomb blew up in Devoy's hand, injuring her and precipitating a lawsuit against defendant.

At the time of Devoy's injury, defendant was insured by Fire Insurance under a homeowner's policy which provided in part: "We pay those damages which an *insured* becomes legally obligated to pay because of *bodily injury* ... resulting from an *occurrence* to which this coverage applies.... At our expense and with attorneys of our choice, we will defend an *insured* against any covered claim or suit." An "occurrence" is defined by the policy as "an accident including exposure to conditions which results ... in bodily injury."

There is an exclusion in the policy which provides in part: "We do not cover *bodily injury* ... which ... is either ... caused intentionally by or at the direction of an insured; or ... results from any *occurrence* caused by an intentional act of any *insured* where the results are reasonably foreseeable."

Pursuant to the policy terms, defendant tendered the defense of Devoy's suit to Fire Insurance. In response, Fire Insurance filed a declaratory relief action seeking a determination of its legal obligation to defendant.

In the declaratory relief action, Fire Insurance filed a summary judgment motion, arguing that because defendant's act of throwing the cherry bomb onto Devoy's porch was not an "occurrence" as defined by the policy, there was no coverage under the policy and, alternatively, if found to be an occurrence, defendant's intentional act was excluded from coverage pursuant to the exclusionary language contained in the policy. In his response to the motion, defendant argued summary judgment was inappropriate because a disputed issue of fact existed as to whether defendant intended to harm Devoy. On January 2, 1996, the trial court entered an order granting Fire Insurance's motion, ruling that Fire Insurance "ha[d] no duty to defend or indemnify [defendant] from litigation arising

1. The facts underlying this declaratory action are undisputed.

out of the incident in which Beverly Devoy was injured." Defendant appeals.

## ISSUES

Defendant raises two issues on appeal: (1) Whether the incident between defendant and Devoy falls within the policy's definition of occurrence; and, if so, (2) whether the incident is excluded from coverage under the policy terms.

## STANDARD OF REVIEW

A trial court properly grants summary judgment only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 368 (Utah 1996). Whether the trial court properly granted summary judgment is a question of law which we review for correctness, according no deference to the trial court's decision. *State Farm Fire & Cas. Co. v. Geary*, 869 P.2d 952, 954 (Utah App.1994).

## ANALYSIS

The policy issued to defendant by Fire Insurance provides coverage for damages for bodily injury caused by an "occurrence." However, to fall within the policy's definition of occurrence, and thus within the scope of coverage, the bodily injury must have resulted from an "accident."

While the parties do not dispute that defendant intentionally tossed the cherry bomb onto Devoy's porch, they dispute whether, in determining whether there was a covered occurrence under the policy, our focus should be on defendant's intentional act of throwing the cherry bomb or Devoy's injury. Fire Insurance suggests that the deliberate act which ultimately results in the injury is controlling; defendant, on the other hand, contends that the unintended injury of Devoy should be the focus of whether an accident occurred and, therefore, a covered "occurrence" under the policy.[2] This issue was

previously addressed by this court in *Geary*, 869 P.2d at 952.

In *Geary*, Edward, the insured, intentionally fired a shotgun in Geary's direction, allegedly in an attempt to frighten Geary into leaving Edward alone. *Id.* at 953. However, Geary was struck by the shotgun pellets and injured. Geary filed suit, seeking monetary damages from Edward for the injuries. *Id.* at 954. At the time Edward deliberately fired his shotgun toward Geary, Edward was insured by State Farm under a homeowner's insurance policy it issued to Edward. After Edward tendered his defense to State Farm, State Farm filed a declaratory action seeking a determination of coverage. State Farm argued, "the policy's exclusionary clause relieved it of any duty to defend or provide coverage for Edwards because he intentionally shot Geary." *Id.* at 954. The trial court granted summary judgment in favor of State Farm, and Geary appealed.

 The *Geary* court correctly began its analysis by first focusing on whether the incident was an "occurrence," also defined as an "accident" under the homeowners policy State Farm had issued to Edward. In determining whether the focus should be on the deliberate shooting or the unintended injury, the court concluded that the proper focus was on the accidental or intentional nature of the act and not the resulting injury. The court stated,

> While the parties may dispute whether Edwards subjectively intended to injure Geary, that question is irrelevant to our analysis of whether there was an "occurrence" under the policy. Because Edwards intentionally fired the shotgun, his act of pulling the trigger qualifies as a "deliberate act." Hence, we conclude that Edwards's homeowners insurance policy was not designed to include as an "occurrence" an intentional shotgun blast without any independent intervening act, even if the resulting injury was unintended.

*Id.* at 956.

In reaching its decision, *Geary* adopted the reasoning used in a line of Washington cases which hold,

---

**2.** Defendant conceded at oral argument that had Black been injured, there would be no coverage under the policy.

" 'To recover under a policy insuring against death or injury by accidental means, (1) it is not enough that the *result* was unusual, unexpected or unforeseen, but it must appear that the *means* was accidental; and (2) *accident is never present when a deliberate act is performed, unless some additional unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.*' "

*Id.* at 955 (quoting *Safeco Ins. Co. of Am. v. Dotts,* 38 Wash.App. 382, 685 P.2d 632, 633–34 (1984) (quoting *Johnson v. Business Men's Assurance Co. of Am.,* 38 Wash.2d 245, 228 P.2d 760, 762 (1951))). Thus, " 'an accident is "never present" when a deliberate act is performed absent an "independent" unforeseen act.' " *Id.* at 956 (quoting *Safeco,* 685 P.2d at 635).

■ Although *Geary* involved a shotgun and this case involves a cherry bomb, our analysis is similar.[3] Undisputably, defendant intentionally tossed the cherry bomb onto Devoy's porch; therefore his act of throwing the cherry bomb can be regarded as nothing but a "deliberate act." Although Devoy was not on the porch at the time the cherry bomb was thrown, her act of coming onto the porch and picking up the cherry bomb is not such an "additional, unexpected, independent, and unforeseen happening" as to convert defendant's intentional conduct into an accident. To the contrary, under the facts of this case, a reasonable person would anticipate and expect that an injury might occur from such conduct. It is not necessary that the exact chain of events leading up to the injury be foreseen, but only that the injury fall within the spectrum of foreseeability.

Nonetheless, defendant argues that if we focus on the accidental or intentional nature of the act of the tortfeasor, as opposed to the accidental or intentional nature of the injury itself, "[n]o accident resulting from any intentional act would ever be covered under a personal liability policy because intentional acts which result in injury generally can be *expected* to result in injury." However, we neither read the decision in *Geary* so broadly, nor do we so hold today.

Although *Geary* correctly noted that *Hoffman v. Life Ins. Co. of North America,* 669 P.2d 410 (Utah 1983), can be distinguished as an accidental death policy case, *Geary,* 869 P.2d at 955, *Hoffman*'s definition of accident is instructive for articulating when a covered occurrence may grow out of an intentional act:

" '*The word is descriptive of means which produce effects which are not their natural and probable consequences.* ... An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.' "

*Hoffman,* 669 P.2d at 415 (quoting *Richards v. Standard Accident Ins. Co.,* 58 Utah 622, 636, 200 P. 1017, 1023 (1921) (quoting *Western Commercial Travelers' Assoc. v. Smith,* 85 F. 401, 405 (8th Cir.1898))). "*Richards* defined 'the natural and probable consequence' of an act as follows: 'The natural consequence of means used [is] the consequence which ordinarily follows from their use—the result which may be reasonably anticipated from their use, and which ought to be expected.' " *Allstate Ins. Co. v. Patterson,* 904 F.Supp. 1270, 1279 (D.Utah 1995) (quoting *Richards,* 200 P. at 1023) (alteration in original) (anticipating Utah law in defining "accident" as used in homeowner's policy). Therefore, "[w]hether, in a particular case, an intentional act leading to unintended harm is considered accidental or not generally depends on the likelihood that the intentional act will result in harm of the type that in fact occurred." *Id.*

■ In the case at bar, it is relatively easy to distinguish between a covered occurrence and a noncovered act. Devoy's injury is the "natural and probable consequence" of defendant's intentional tossing of the cherry bomb in the immediate vicinity of others; the likelihood that an injury may occur is high and

---

**3.** Indeed, *Geary* stated, "[O]ur decision does not hinge on the type of weapon used." *State Farm* *Fire & Cas. Co. v. Geary,* 869 P.2d 952, 958 n. 12 (Utah App.1994).

" 'may be reasonably anticipated ... and ... ought to be expected.' " *Id.* (quoting *Richards,* 200 P. at 1023). On the other hand, it does not follow that the result of an insured's intentional conduct can *always* be reasonably anticipated or expected, particularly where the injury resulting from the insured's deliberate act involves an " ' "additional, unexpected, independent, and unforeseen happening [that] occur[red] which produce[d] or br[ought] about the result of injury." ' " *Geary,* 869 P.2d at 955 (emphasis omitted) (quoting *Safeco,* 685 P.2d at 633–34 (quoting *Johnson,* 228 P.2d at 762)). As we have said, the scope of anticipated or expected risk of injury is significantly greater when firing a shotgun or throwing a cherry bomb than, say, throwing a water balloon. Thus, our holding today and the holding in *Geary* do not stand for the proposition that any injury caused by an intentional act cannot be an occurrence under the policies at issue. Under the facts and circumstances of this case, however, as a matter of law there was no occurrence within the meaning of the policy and Fire Insurance is under no duty to defend defendant in the action brought against him by Devoy.[4]

## CONCLUSION

We hold as a matter of law that defendant's intentional tossing of the cherry bomb onto Devoy's porch is not an "occurrence" as defined by the policy and, therefore, Fire Insurance has no duty to defend defendant in the action brought against him by Devoy. As there are no genuine issues of material fact, the trial court's grant of summary judgment in favor of Fire Insurance is affirmed.

JACKSON, J., concurs.

ORME, J., dissents.

---

4. We therefore do not address defendant's second issue of whether the policy's exclusionary clause applies.