2008 UT 1

**N.M. on behalf of her son CALEB, Plaintiff and Appellant,**

v.

**DANIEL E. and Safeco Property & Casualty Insurance Companies, Defendants and Appellees.**

No. 20060284.

Supreme Court of Utah.

Jan. 8, 2008.

Nelson Abbott, Provo, for plaintiff.

Robert L. Janicki, Joseph E. Minnock, Sara N. Becker, Salt Lake City, for defendants.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Daniel swung a hockey stick at Caleb, striking him in the head and causing serious injuries. The question before us is whether the district court properly concluded in a summary judgment adjudication that this event was not an accident for the purposes of insurance coverage. We reverse the district court and hold that summary judgment was improper.

## BACKGROUND

¶ 2 During the first three days of a hockey camp, seven-year-old Caleb and some of the other boys teased eight-year-old Daniel for being an inferior hockey player. On the third day of the camp, Daniel reacted violently to the verbal jabs of his peers. While in the locker room suiting up for practice, Caleb and two other boys began to tease Daniel again. Daniel responded by swinging his hockey stick at Caleb, who was wearing a full set of hockey pads but was not wearing his helmet. Daniel testified in his deposition that he was aiming the blow at Caleb's protected shoulder area and that he had no intention of hurting him. Instead, Daniel's stick struck Caleb in the head, causing serious injuries that required hospitalization and brain surgery.

¶ 3 Daniel was covered by a homeowner's insurance policy issued by Safeco Insurance Company of America ("Safeco").[1] This policy indemnified Daniel against liability for "damages because of *bodily injury* or *property damage* caused by an *occurrence.*" The policy defined an "occurrence" as "an accident, including exposure to conditions which result in: *bodily injury;* or *property damage.*"

---

1. Although the policy was issued by Safeco Insurance Company of America, Caleb's representatives named an affiliated company, Safeco Property & Casualty Insurance Companies, as a defendant. In a cryptic footnote to its motion for summary judgment, this defendant appears to have waived any claim related to the discrepancy. Because this issue was not raised by either party on appeal, we likewise gloss over the inconsistency and refer to this defendant throughout this opinion simply as "Safeco."

¶ 4 Caleb filed a claim against the policy for his injuries, but Safeco denied coverage. Caleb then filed suit against Safeco, seeking a declaratory judgment that Safeco must provide coverage to Daniel for any legal liability arising out of the incident. Safeco filed a motion for summary judgment, asserting that it had no liability because the incident was not an "accident" under the terms of the policy.[2] The district court agreed and entered summary judgment in favor of Safeco. We now review the district court's ruling and reverse.

## STANDARD OF REVIEW

■ ¶ 5 A district court shall enter summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Thus, in reviewing a district court's grant of summary judgment, an appellate court "view[s] the facts and all reasonable inferences drawn therefrom in the light most favorable to *the nonmoving party*," *Sur. Underwriters v. E & C Trucking, Inc.*, 2000 UT 71, ¶ 15, 10 P.3d 338, and cedes no deference to the lower court's legal conclusions, *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122.

## ANALYSIS

■ ¶ 6 Safeco's duty to indemnify Daniel is determined by the terms of the insurance policy covering him. *See Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 14, 27

P.3d 555. The policy covers events deemed to be accidents. Although the policy itself does not define the term "accident," Utah case law has consistently defined this term in insurance policies:

> The word [accident] is descriptive of means which produce effects which are not their natural and probable consequences.... The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.

*Richards v. Standard Accident Ins. Co.*, 58 Utah 622, 200 P. 1017, 1023 (1921) (internal quotation marks omitted); *see also Therkelsen*, 2001 UT 48, ¶ 15, 27 P.3d 555; *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 13, 983 P.2d 575; *Hoffman v. Life Ins. Co. of N. Am.*, 669 P.2d 410, 416–17 (Utah 1983); *Thompson v. Am. Cas. Co.*, 20 Utah 2d 418, 439 P.2d 276, 278 (1968); *Handley v. Mut. Life Ins. Co.*, 106 Utah 184, 147 P.2d 319, 322–23 (1944); *Sanders v. Metro. Life Ins. Co.*, 104 Utah 75, 138 P.2d 239, 242–43 (1943).

■ ¶ 7 There are thus two independent methods by which bodily injury or property damage may be deemed nonaccidental. First, harm or damage is not accidental if it is the result of actual design or intended by the insured. Second, harm or damage is not accidental if it is the natural and probable consequence of the insured's act or should have been expected by the insured.[3] The

---

**2.** The Safeco policy also has a provision that excludes coverage for damage "expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured." Although this language obviously touches upon issues similar to those addressed in this opinion, because this clause was neither addressed in the district court's order granting summary judgment nor raised by Safeco, we make no determination regarding the effects of this language.

**3.** Litigation in this area has almost exclusively focused on the natural and probable consequence test. This is understandable because if

an insured intended the harm, it would almost always be the natural and probable consequence of the insured's action. Theoretically, however, there are situations in which the resultant harm is not the natural and probable consequence of an act, but the harm is nevertheless not accidental because the insured intended it. For example, if an unskilled marksman were to shoot a single bullet at a distant individual with the intent of killing her, that individual's injury or death may not be the natural and probable consequence of the insured's act. But if the shooter were to strike the intended target, the harm would not be an accident because the shooter

first category presents a factual question as to what the insured intended. The second category generally presents a legal question as to what the average individual would expect to happen under the circumstances. *See Hoffman,* 669 P.2d at 419.

¶ 8 The parties have raised several legal issues regarding the application of these two tests. We first resolve these legal issues and then proceed to apply these two tests in our review of the summary judgment proceeding.

¶ 9 The first legal question raised by the parties is whether Daniel's age is relevant in determining if Caleb's injury was the natural and probable consequence of Daniel's swinging his hockey stick. We hold that it is relevant. The question of whether harm is the natural and probable consequence of an act is determined from the perspective of the insured. *Id.* at 416; *Allstate Ins. Co. v. Patterson,* 904 F.Supp. 1270, 1277 (D.Utah 1995). In determining what is natural and probable from the insured's perspective, "[e]ach individual may be considered the average individual unless the facts disclose that in reality he is not; and when the facts do so show, then the question of the accidental nature of the result must be measured by this knowledge." *Hoffman,* 669 P.2d at 419 (internal quotation marks omitted). In short, we apply "an objective test unless the evidence shows that the insured is not an 'average individual.'" *Id.* Because eight-year-old children lack the experience, maturity, and reasoning skills of adults, Daniel was clearly not an average individual at the time of the incident. We therefore determine the natural and probable consequence of Daniel's actions from the perspective of an average eight-year-old child.[4]

¶ 10 We next resolve the question of whether we focus on the actions of the tortfeasor or the resulting injury as being accidental in nature. According to this court's

clear precedent, we focus on the accidental nature of the injury. Safeco, however, relies upon two cases from the court of appeals for the proposition that we should focus on the accidental nature of the act giving rise to the injury. In *State Farm Fire & Casualty Co. v. Geary,* 869 P.2d 952, 955 (Utah Ct.App. 1994), the court of appeals, in examining whether an injury resulting from a shotgun blast was caused by an accident, stated:

> Seemingly, the resolution of this "occurrence" issue hinges on whether we focus on either the shooting or the injury as accidental or intentional. For the reasons explained below, we are persuaded by the case law which focuses on either the accidental or intentional nature of the shooting, rather than the ensuing injury.

In support of this proposition, the court quoted a decision of the Washington Court of Appeals, which stated that "'[an] accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.'" *Id.* (emphasis omitted) (quoting *Safeco Ins. Co. of Am. v. Dotts,* 38 Wash.App. 382, 685 P.2d 632, 633–34 (1984)). Later, in *Fire Insurance Exchange v. Rosenberg,* 930 P.2d 1202, 1203 (Utah Ct.App.1997), the court of appeals examined whether tossing a lit cherry bomb onto the property of another had produced an accident. Following its own precedent from *Geary* and once again quoting language from the Washington Court of Appeals, the court held that the injury in question was not accidental because it was a foreseeable result of the deliberate act of throwing the cherry bomb. *Id.* at 1205.

¶ 11 We reject the approach taken by the Utah Court of Appeals in these two cases because it conflicts with this court's clear precedent.[5] First, we have clearly held that

---

intended the harm, even though the likelihood of success was improbable.

**4.** Because there is no evidence that Daniel had a mental health condition that impaired his ability to gauge the consequences of his actions, we view the question of what Daniel anticipated to be the natural and probable consequences of his act from the point of view of an average eight-

year-old. Thus, the question remains essentially objective and therefore legal in nature, rather than a subjective, factual question as to what Daniel, as an individual, expected to happen.

**5.** We do not wish to imply, however, that the application of the correct legal standard in those two cases would have yielded a different result. Rather, we express no opinion on that subject.

we do not examine whether an act is intentional or deliberate, but rather whether the result was intended or expected: "This court has definitely gone on record as construing the ["accidental means" provision] and equivalent provisions as reaching cases where the death or disablement is the unexpected result, intended acts making the result itself, rather than the means, the accident." *Handley*, 147 P.2d at 322. Even if an act is not accidental but intended, it may result in an accident if "the *result* was unexpected [and] unanticipated."[6] *Id.; accord Kellogg v. Cal. W. States Life Ins. Co.*, 114 Utah 567, 201 P.2d 949, 951 (1949) ("[I]f death is an unexpected result of an intended act it is to be considered accidental."); *Richards*, 200 P. at 1023. Second, the language adopted by the Utah Court of Appeals from the Washington Court of Appeals improperly introduces the concept of foreseeability to the definition of "accident." *Rosenberg*, 930 P.2d at 1205 (erroneously holding that the resulting injury need only "fall within the spectrum of foreseeability"). We have clearly held that "the test is not whether the result was foreseeable, but whether it was expected."[7] *Hoffman*, 669 P.2d at 416.

■ ¶ 12 Having determined that we look to whether the injury, rather than the act giving rise to the injury, is accidental, we turn to the related question of what degree of harm must be intended or expected in order for an event to be deemed nonaccidental. Daniel argues that someone of his tender age could not have expected that the act of swinging the hockey stick would result in a skull fracture and serious brain injuries. He contends that because the degree of injury was unintended and unanticipated, the harm was accidental in nature. We disagree. Although we look to whether the injury in general is accidental, we concur with the New Hampshire Supreme Court that the specific type of injury suffered need not be intended or expected by the insured. *Vt. Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 803 (1986). As Justice Souter analogized, intentionally striking a pedestrian with a car is "so inherently injurious that the collision would not be regarded as an [accident] even if the insured did not actually intend to break any bones." *Id.* As long as some sort of injury was intended or expected, the actual injury suffered is not accidental even if the actual injury differs in nature or degree from what might have been reasonably anticipated. Only where the injury suffered is completely disproportionate to the injury intended or reasonably expected would the actual injury be considered accidental in nature.[8] Therefore, in examining the case before us, we analyze whether Daniel intended or expected to inflict some sort of nontrivial injury on Caleb.

■ ¶ 13 Having resolved the issues inherent in the legal tests for determining whether an injury arises from an accident, we now analyze whether Caleb's injuries were accidental in nature. We must first ascertain if there is a genuine issue of material fact as to whether Daniel intended to cause a nontrivial injury. We conclude that there is a genuine issue of fact as to Daniel's intent. Daniel testified in his deposition that he did not intend to harm Caleb. Because Caleb was

6. For example, we generally consider the motorist who collides with another vehicle due to excessive speed to have been involved in an accident. Inherent in our characterization of the incident as an accident is the recognition that while the motorist did intend to exceed the speed limit, he did not intend to cause a collision. In other words, we focus on whether the resulting collision was intended or expected, rather than on whether the underlying act of speeding was intentional.

7. If foreseeability were the measure of what constitutes an accident, then Safeco and other insurers with similar policies would never have a duty to indemnify policy holders, rendering coverage completely illusory. Under traditional notions of tort law, individuals are liable for only the foreseeable harm of their negligent acts. Therefore, if an injury is unforeseeable, the insured would not be liable and the insurer would have no duty to indemnify. If, on the other hand, an injury is foreseeable, the insurer could avoid the duty to indemnify by asserting that the injury was not an accident.

8. For example, in *Dotts*, 685 P.2d at 632, a man lapsed into a coma and died several hours after receiving an open-handed slap to the face that left no mark upon him. This scenario is an example of a situation where the injury actually suffered was so disproportionate to any reasonably anticipated injury that the incident would be categorized as an accident.

protected by a full set of hockey pads, and because striking a protected player on the pads would likely cause little or no injury, this testimony is plausible enough to be given at least some weight.[9] Therefore, there is an issue of fact as to what Daniel intended when he swung the hockey stick, making summary judgment under this test improper.

¶ 14 We next consider whether an average eight-year-old would view a nontrivial injury as the natural and probable consequence of swinging a hockey stick into the upper body[10] of another child who was wearing hockey pads. We hold that under such circumstances, the average eight-year-old would not have expected to inflict any substantial injury. Had Daniel accurately struck his intended target, Caleb would likely have suffered little or no harm. The question remains, however, whether an average eight-year-old would perceive that the natural and probable result of his act would be to miss his mark and strike an unprotected area. Because of lack of experience, an eight-year-old is less likely than an adult to appreciate the potential danger of hitting an unintended area. Therefore, the average eight-year-old would not expect that nontrivial bodily harm would be the natural and probable result of such an act.

¶ 15 Safeco attaches a great deal of importance to the fact that Daniel admitted in his deposition that he knew hitting someone with a stick could cause injury. However, the relevant legal standard is not based on a recognition of what possibly could happen, but rather, what probably would happen. And Daniel's admission does not profess the level of certainty necessary to suggest that the injury was either intentional or expected.

## CONCLUSION

¶ 16 We conclude that there is a genuine issue of material fact as to whether Daniel intended to inflict nontrivial harm upon Caleb. We also hold that an average eight-year-old would not anticipate anything more than a minor injury as a result of a hockey stick striking the padded shoulder of another child. We therefore reverse the district court's entry of summary judgment and remand the case for further proceedings consistent with this opinion.

¶ 17 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.

9. We recognize that self-serving testimony as to what an insured intended to happen or intended to do presents particular problems in cases such as these. A dishonest insured can always present testimony that he did not intend the harm suffered or that he intended an act that would not produce physical harm in an attempt to avoid summary judgment. We recognize the potential for self-serving testimony to be so inherently improbable that it would fail to produce a *genuine* issue of material fact. This, however, is not such a case.

10. Daniel testified in his deposition that he was aiming his blow "[s]ort of like in his shoulderish." Because his testimony is plausible, and because we must view the facts in the light most favorable to the nonmoving party, we accept Daniel's testimony for the purposes of our review. At trial, however, the fact-finder may choose to disbelieve Daniel's testimony and determine that a different version of events actually occurred.