**MID–CONTINENT CASUALTY COMPANY,**
Plaintiff in Error,

v.

**Ray L. WEST, Administrator of the Estate
of Golda May West, Deceased, Defend-
ant in Error.**

No. 38460.

Supreme Court of Oklahoma.

Dec. 1, 1959.

Rehearing Denied April 5, 1960.

Application for Leave to File Second
Petition for Rehearing Denied
May 3, 1960.

Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for plaintiff in error.

Walt Allen, and Sam M. Williams, Chickasha, and Funston Flanagan, Walters, for defendant in error.

BLACKBIRD, Justice.

On the morning of September 19th, 1956, one Lenard E. Tucker, a resident of Temple, Oklahoma, and also an employee of Sparks Grain Company, owned a 1954 model Buick, and his father, sometimes hereinafter referred to as "Mr. Tucker", who was a cafe operator in the same town, owned a 1956 model Pontiac. On that morning, Lenard E. Tucker, hereinafter referred to as the "insured", or by his given name of "Lenard", having been directed by his employer, the evening before, to drive from Temple to Oklahoma City on Company business, left his parent's home, where he also resided, ate breakfast at his father's cafe and decided while there, that because of the worn condition of his Buick's tires, he would not drive it on that trip. Accordingly, he borrowed his father's Pontiac and left his Buick, with the keys in it, parked on the street near the cafe. Lenard had not driven the Pontiac many miles toward Oklahoma City before becoming involved in a collision, which resulted in the death of defendant in error's intestate. After the accident, Lenard returned to Temple in the Pontiac about 1:30 that afternoon, and, after returning said auto to his father, worked the rest of the day at Temple, driving his own car.

Thereafter, in an action for damages on account of the aforementioned death, defendant in error recovered judgment in the sum of $25,650.00 against Lenard. Insurance companies other than plaintiff in error contributed to the limit of their cover-

ages in paying $15,000.00 of said judgment. Thereafter, Lenard made written demand upon plaintiff in error, his insurer under a liability insurance policy issued to him in connection with his ownership and operation of the Buick, to pay the amount of its claimed coverage, i. e., $5,000.00 on the remainder of said judgment debt, aggregating more than $10,000.00.

Plaintiff in error denied liability under the policy and defendant in error instituted the present action, as plaintiff, to recover the $5,000.00 against plaintiff in error, as defendant.

Upon trial of the cause before the court, after jury waiver, said plaintiff recovered the judgment sought; and the defendant insurer perfected this appeal. We will hereinafter refer to the parties by their trial court designations, and to Lenard E. Tucker as the "insured."

There is no significant question of fact present herein, it being agreed that the only question to be determined is whether or not the policy involved covered the insured's operation of his father's Pontiac under the circumstances in evidence. The policy's provision controlling the matter extends the claimed coverage to a "Temporary Substitute Automobile", which term it defines as follows:

> " * * * an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile *when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."* (Emphasis ours.)

Defendant's position in denying liability under the policy at the trial, and in herein attacking the trial court's judgment rejecting said denial, depends solely on whether or not, under the circumstances surrounding the insured's driving of his father's Pontiac on the aforedescribed trip of September 19th, 1956, it was a "temporary substitute automobile" within the above-quoted definition.

Defendant's argument under its single proposition seems to be two-pronged in that it maintains that, during the insured's use of his father's Pontiac on the trip, his own car—the Buick, referred to in the above quoted provision as "the described automobile"—was not only not "withdrawn from normal use", but that its not being used for the Oklahoma City trip was not "because of its breakdown, repair, servicing, loss or destruction", within the meaning of the above provision's quoted phrases.

■ Defendant contends that the last quoted phrase requires that the insured's own automobile be in such a condition that it is "actually disabled" and cannot be used. For this, its counsel cites Iowa Mutual Ins. Co. v. Addy, 132 Colo. 202, 286 P.2d 622, and State Farm Mutual Automobile Ins. Co. v. Bass, 192 Tenn. 558, 241 S.W.2d 568. In the cited Colorado case, the policy involved had a "temporary substitute automobile" provision exactly like the one involved here, and it was issued in connection with the operation of an Oldsmobile sedan belonging to plaintiff's husband, an employee of a casualty company. Plaintiff's injury occurred on the couple's trip to some friends' home in a Chevrolet furnished the husband by his employer for use in his work of claims adjusting. The only reason the couple used the Chevrolet, instead of the Oldsmobile for the trip, was that the Oldsmobile was low in gasoline and had heavy snow chains on its tires. In holding that the Chevrolet was not covered by the policy, the court expressed the opinion that the trial court's apparent idea that, the reason the Oldsmobile was not used, might be termed a "withdrawal" because of "servicing" within the language of the temporary substitute provision, stretched or "strained" the definition of the word "servicing." We think the cited opinion reached the right result as it is plain that the reason for the substitution of automobiles there was purely convenience. In this connection, see Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. v. Robertson, 4 Cir., 259 F.2d 389, 392. And, we agree that, to be covered by such a provision, a substitute vehicle cannot be used merely because it is more suitable than the "described", or principally insured, automobile, as was indicated in the above cited Tennessee case. With these observations, however, we think the similarity between the cited cases and the present one ceases. In the present case, the evidence is undisputed that at least one of the four tires on Lenard's Buick, as well as its so-called spare tire, would have been dangerous to use on the Oklahoma City trip. Lenard's testimony, corroborated by the deposition of his local tire dealer, was that, about a week or 10 days before the day of the accident, he had placed a new tire order with said dealer, and that, the day before the accident, he drove his Buick to the dealer's establishment to see if his new tires had arrived, and found that they had not. Before he left the tire store, the dealer examined the old tires then on the car, found they had two holes in them, declared them unsafe and advised him against attempting to use them on an out-of-town trip like the one to Oklahoma City. When asked if the tires' safety "was a matter of distance", the dealer deposed that Lenard could have used the tires, "with reasonable safety around town" and on "short hauls." On cross examination, the witness stated: "Like I told him, I would have been afraid to start*ed* down the street in them myself." In our opinion, the evidence showing that it would have been *possible* to use said auto, equipped with the old tires, for short trips in Temple is not of controlling significance. It is a matter of common knowledge that there is a difference in the dangers involved in using badly worn tires for that kind of driving and in using them on a long trip at sustained high speeds, especially in hot weather like existed at the time of Lenard's proposed trip to Oklahoma City. Under the reasonable and liberal interpretation that must be given the "temporary Substitute automobile" provision, its wording does not mean that the insured's own car, or the "described automobile", must be disabled from all use. (See Allstate Ins. Co. v. Roberts, 156 Cal.App.2d 755, 320 P.2d 90, 91, 92, in which the court

recognized that such provision may contemplate withdrawal from normal use of an auto whose use for an out-of-town trip, might be "imprudent", as distinguished from impossible). It says only: " * * * while withdrawn from normal use * *". (Emphasis ours.) It is not disputed that the insured's "normal" use included out-of-town, as well as in-town trips. Therefore, if the Buick was dangerous and disabled for trips which Lenard customarily made in it, like the one in question, we think it was disabled for his "normal use", within the meaning of that term in the quoted provisions; and we so hold.

Nor do we deem it particularly significant that Lenard left his Buick parked near his father's cafe, with the keys in it, when he borrowed his father's Pontiac for the trip. In this situation, defense counsel say Mr. Tucker *could have* used the Buick while Lenard was gone, had he chosen so to do. They contend that, because of this, the Buick was not "withdrawn" from *all* normal use, within the rule announced in Service Mutual Ins. Co. of Tex. v. Chambers, Tex.Civ.App., 289 S.W.2d 949, and they infer that if Lenard's father had used the Buick while Lenard was gone, then the interpretation of the temporary substitute automobile provision contended for by plaintiff, would have the effect of furnishing insurance on two autos at the same time with one policy, which was never intended to be the purpose of such a provision. We do not agree. We think the fact that the Buick was not operated while Lenard was driving the substitute Pontiac overshadows the idea that it might, or *could*, have been operated by Mr. Tucker, and overlooks the important distinction between "normal use" (which means "normal" as pertains to the insured and his customary use of the "described automobile") and "possible" use by someone other than the insured. This fact distinguishes this case from Erickson v. Genisot, 322 Mich. 303, 33 N.W.2d 803, also cited by defendant.

In view of the foregoing, we have determined that the arguments of the defendant demonstrate no error in the judgment of the trial court. Accordingly, said judgment is hereby affirmed.

WILLIAMS, V. C. J., and HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH, J., concurs in result.

DAVISON, C. J., and JOHNSON, J., dissent.