**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 12 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

HOUSTON GENERAL INSURANCE
COMPANY,

       Plaintiff-Appellee,

v.

AMERICAN FENCE COMPANY,
INC.,

       Defendant-Appellant.

No. 96-6197

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-95-1889-A)

---

Submitted on the briefs:

Robert B. Mills and Don R. Martin of Mills & Whitten, Oklahoma City,
Oklahoma, for Plaintiff-Appellee.

Joseph J. Reinke, Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before EBEL, HENRY, and MURPHY, Circuit Judges.

---

EBEL, Circuit Judge.

---

Defendant American Fence Company, Inc. appeals from a summary judgment granting declaratory relief for plaintiff Houston General Insurance Company.[1]  The only issue presented is whether the district court was correct in concluding that a personal vehicle being driven by an American Fence employee did not constitute a "covered 'auto'" under the temporary substitute auto provision of an insurance policy issued to American Fence by Houston General. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The facts are undisputed.  On December 19, 1991, Jim Woodie, the president of American Fence, and John Woodie, an American Fence employee, drove Jim's 1986 pickup truck to a Chevrolet dealership in Oklahoma City.  The purpose of their trip was to pick up a new 1992 pickup truck, which had just been purchased by American Fence, and to take it to Cellular One in Edmond, Oklahoma, where they intended to leave it for installation of a cellular telephone. After leaving Jim at the dealership, John proceeded to drive toward Edmond in Jim's truck, with the intention of meeting Jim at Cellular One so the two could return to American Fence together in Jim's truck once the 1992 pickup was dropped off.  En route to Edmond in Jim's truck, John was involved in an

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

-2-

accident. John paged Jim to inform him of the accident, whereupon Jim left the dealership and drove the 1992 pickup to the scene.

At the time of the accident, a commercial insurance policy issued by Houston General to American Fence was in effect. The policy specifically listed two "covered autos," one of which was the new 1992 pickup. There is no question that the 1992 pickup was covered at the time of John's accident in the 1986 pickup. The policy also extended liability coverage to "temporary substitute autos," defined as "[a]ny 'auto' you do not own while used with the permission of its owner as a temporary substitute for a covered 'auto' you own that is out of service" because of its breakdown, repair, servicing, loss, or destruction. Appellant's App. at 7.

Confronted with a demand to defend and indemnify American Fence in a civil action arising out of the accident, Houston General sought declaratory relief in federal district court. The question presented was whether, at the time of the accident, the 1986 pickup constituted a temporary substitute auto under the policy. On cross motions for summary judgment, and pursuant to stipulated facts, the district court concluded that the new 1992 pickup was not "out of service" within the meaning of the policy, and thus the 1986 pickup was not a temporary substitute auto at the time of the accident. American Fence appeals. When the relevant facts are undisputed, we review the district court's interpretation of an

insurance contract de novo.  See State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 521 (10th Cir. 1994).  The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.  See Braun v. Annesley, 936 F.2d 1105, 1108 (10th Cir. 1991).

"Under Oklahoma law related to insurance contracts, '[t]he terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intentions of the parties as it existed at the time of the contract.'"  American Cas. Co. v. Federal Deposit Ins. Corp., 958 F.2d 324, 326 (10th Cir. 1992) (quoting Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991)).  We are mindful, as appellant appears to suggest in its brief, that where a genuine ambiguity exists in an insurance policy, Oklahoma courts will interpret the contract most favorably to the insured and against the carrier.  See, e.g., id.  Appellant does not contend, however, that any such ambiguity exists here, and we find none.

We believe the key to interpretation in this case lies in the purpose behind the temporary substitute automobile provision.  Although we find no Oklahoma decision which explicitly sets forth the purpose, courts that have considered the matter in other jurisdictions appear to be in agreement.  The objective of the substitution provision is to afford temporary coverage to an insured who is using a borrowed vehicle because he or she is unable to use the vehicle designated in

-4-

the policy for one of the specified reasons. See, e.g., St. Paul Fire & Marine Ins. Co. v. Nationwide Mut. Ins. Co., 558 A.2d 1244, 1246 (Md. Ct. Spec. App. 1989); A & S Trucking Co. v. First General Ins. Co., 578 So.2d 1212, 1216 (Miss. 1990); Knipp v Truck Ins. Exch., 857 S.W.2d 281, 284 (Mo. Ct. App. 1993) (purpose is to permit the insured to continue to operate another motor vehicle should the designated vehicle be temporarily out of commission); Farmland Mut. Ins. Co. v. Farmers Elevator, Inc., 404 N.W.2d 473, 476 (N.D. 1987). See generally 6B John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4293.5, at 209-11 (Buckley ed. 1979) ("purpose is to extend temporary protection . . . when [breakdown, repair, servicing, loss or destruction] prevents the insured from making use of the vehicle he had protected by insurance"); 12 George J. Couch, et al., Couch Cyclopedia of Insurance Law 2d § 45.219, at 511-12 (rev. ed. 1981). It has been repeatedly said that the purpose of a substitute automobile provision is not to defeat liability but, rather, to provide additional coverage for the insured yet reasonably define coverage by limiting the insurer's risk to one operating vehicle at a time for a single premium. See, e.g., Preferred Risk Mut. Ins. Co. v. Lewallen, 703 P.2d 1232, 1234 (Ariz. Ct. App. 1985); Standard Mut. Ins. Co. v. Sentry Ins., 497 N.E.2d 476, 480 (Ill. App. Ct. 1986); Farmland Mut. Ins. Co., 404 N.W.2d at 476; Atkinson v. State Farm Mutual Auto. Ins. Co., 480 N.E.2d 819, 821 (Ohio Ct. App. 1984) (purpose is to provide "continuous

coverage" to insured while limiting risk to one operating vehicle at a time for a single premium). See generally Appleman § 4293.5, at 24-25 (Buckley ed. supp. 1997); Couch, supra, § 45.219, at 511-12. To find coverage in this case would defeat the purpose of the substitute automobile provision.[2]

Appellant argues that, under Oklahoma law, it is not necessary for the designated vehicle to be completely disabled or withdrawn from all use before an alternative vehicle can be considered a substitute under a temporary substitute automobile provision. In making this argument, appellant relies on Mid-Continent Casualty Co. v. West, 351 P.2d 398 (Okla. 1959). There, the Oklahoma Supreme Court determined that where the insured used his father's car for an out-of-town business trip because the tires on his own car, which he customarily used for such trips, were badly worn and unsafe for long-distance travel, the father's car was a "temporary substitute automobile" within the meaning of the insured's automobile insurance policy. See id. at 400-01. In finding coverage, the court rejected the insurer's argument that the insured's own automobile had to be

---

[2]     The Oklahoma Supreme Court has explicitly recognized a similar purpose with respect to the standard requirement in substitute automobile provisions that the substitute vehicle be one not owned by the insured. See Utilities Ins. Co. v. Wilson, 251 P.2d 175, 177 (Okla. 1952). In strictly enforcing the requirement, the court declared, "To hold otherwise would be to permit an operator of more than one truck to insure only one vehicle and in the event of an accident with any of his vehicles to take the position that the policy covered the vehicle involved in the accident. This obviously could not be the intention or purpose of the insurance contract." Id.

completely disabled and thus withdrawn from all use before an alternative vehicle could be considered a substitute under the policy. Rather, the court found it sufficient that the automobile was dangerous and disabled for one of the insured's normal uses (out-of-town trips). Id. at 401.

Although West clearly stands for the proposition that a vehicle need not be completely disabled before a substitute automobile provision can be implicated, it does not compel or even suggest a finding that the 1986 pickup was a substitute vehicle in this case. "The term 'substitute' connotes the replacement of one thing for another." St. Paul Fire & Marine Ins. Co., 558 A.2d at 1247 (finding no substitute coverage for a second rental vehicle that was being used by the insured to return the first rental vehicle, which was a covered substitute and being driven by a friend, to the dealership where the insured's covered auto was being repaired). See also Western Cas. & Sur. Co. v. Norman, 197 F.2d 67, 69 (5th Cir. 1952) (in setting aside the trial court's finding that a personal automobile, used extensively in the business, was being used as a substitute for the business' insured vehicle, which was in the shop at the time of the accident, the court explained that "the fact of substitution [is] essential to extend coverage" and, to authorize such extension, the insured must show "not only that the insured vehicle had been withdrawn from service because of a breakdown, but also that except for this the insured car would have been in use at the time and in the circumstances

-7-

involved.  Such showing is necessary to establish 'temporary use as a substitute,' i.e., a car put in the place of another.").  In West, there was no question that, at the time of the accident, the insured was using an alternative vehicle in place of his own.  The only issue before the court was whether the substitution was, as required by the policy there, a result of the insured's own automobile having been "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."  West, 351 P.2d at 399.

The same cannot be said with respect to the case at hand.  Here, there is no indication that the vehicle involved in the accident (the 1986 pickup) was being used in place of the covered vehicle (the 1992 pickup).  On the contrary, the very nature of the task that the insured was seeking to accomplish required the use of both vehicles.  Both Jim and John, in the 1992 and 1986 pickups respectively, had to drive from the Chevrolet dealership to Cellular One so that Jim could leave the 1992 pickup at Cellular One and still get back to American Fence.  Rather than being used in place of the insured vehicle, the 1986 pickup was being used in addition to it for reasons of convenience.  Cf. West, 351 P.2d at 400 (where court indicates that convenience is an insufficient reason to bring even actual substitution within the terms of the coverage afforded by a temporary substitute automobile provision).

We find nothing in <u>West</u> to suggest that a temporary substitute automobile provision might apply where an insured is still actually using the covered vehicle. Appellant seems to concede as much in his brief, relying on the fact that because Jim had not yet left the dealership at the time of the accident, there was "no actual overlapping use." Appellant's Br. at 8 n.1. We agree with appellee that appellant's reliance on this fortuitous circumstance begs the question. Coverage is provided under this provision when a vehicle is used "as a temporary substitute for a covered 'auto'" that is "out of service" because of its breakdown, repair, servicing, loss or destruction. Appellant's App. at 7. The fact is that, at the time of the accident, the insured was in possession of and intended imminently to drive a covered vehicle that was completely operable and at its disposal. Under these circumstances, we do not believe the Oklahoma courts would find the covered vehicle to be withdrawn from normal use simply because the insured intended to drive it somewhere for installation of a cellular telephone.[3]

---

[3] The fact that <u>West</u> does not condition substitute coverage on the covered vehicle's complete disability suggests to us that the Oklahoma courts would find the installation of a cellular telephone to be "servicing" within the meaning of a substitute auto provision. Cf. <u>Sanz v. Reserve Ins. Co.</u>, 172 So.2d 912, 913 (Fla. Dist. Ct. App. 1965) (rejecting the argument that "servicing" should include only those situations where the covered vehicle is "disabled by virtue of a mechanical condition," and finding that having a sign painted on an insured truck constituted "servicing"). This, however, does not eliminate the requirement that the covered vehicle be "withdrawn from normal use" or "out of service" for that purpose. In this regard, we note that the facts in <u>West</u> raised

(continued...)

In <u>West</u>, the court found it not "particularly significant that [the insured] left his Buick parked near his father's cafe, with the keys in it, when he borrowed his father's Pontiac for the [out-of-town] trip," <u>West</u>, 351 P.2d at 401, and thus rejected the insurer's argument that any interpretation short of requiring the complete withdrawal of the covered vehicle from all use raised the specter of forcing the insurer to cover two vehicles at the same time. In explaining its conclusion, however, the court said:

> We think the fact that the Buick was not operated while [the insured] was driving the substitute Pontiac overshadows the idea that it might, or could, have been operated by [the insured's father], and overlooks the important distinction between 'normal use' (which means 'normal' as pertains to the insured and his customary use of the 'described auto') and 'possible' use by someone other than the insured.

351 P.2d at 401.

Appellant argues that a vehicle is "out of service" when it is "not in normal use," and that the 1992 truck "could not be 'normally used' in a manner required by American Fence" prior to installation of a cellular phone, which it characterizes as an integral and necessary piece of equipment on the truck. Appellant's Br. at 6. This argument goes too far. Even appellant admits that Jim

---

[3](...continued) only the issue of when a covered vehicle should be considered "withdrawn from normal use" because of a "breakdown." It presented no occasion to consider when a covered vehicle might be regarded as withdrawn (or "out of service") for "servicing."

placed the truck "in service" as soon as he was notified of the accident, see Appellant's Br. at 7, notwithstanding the fact that it was still without a cellular telephone.

We conclude that the 1986 pickup did not constitute a "temporary substitute" under the policy because (1) it was not being used as a "substitute" for the 1992 pickup, and (2) the 1992 pickup was not "out of service" within the meaning of the policy. Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.