**UNITED STATES COURT OF APPEALS**

**June 19, 2014**

**TENTH CIRCUIT**

SHANNON WAGNER,

      Plaintiff - Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

      Defendant - Appellee.

No. 13-1438
(D.C. No. 1:12-CV-1420-MSK-MJW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **McHUGH**, Circuit Judges.

In this diversity case, Plaintiff-Appellant Shannon Wagner appeals the
district court's grant of summary judgment to American Family Mutual Insurance
Company ("American Family") dismissing her breach of contract claim. Wagner
v. Am. Family Mut. Ins. Co., No. 12-CV-01420-MSK-MJW (D. Colo. Sept. 22,
2013). Ms. Wagner also appeals the district court's dismissal of her statutory and
common law bad faith claims. Our jurisdiction arises under 28 U.S.C. § 1291,
and we affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Background

The facts of this case are not in dispute. Ms. Wagner insured her Aurora, Colorado home through American Family under a homeowner's policy. Aplt. App. 334. In April 2011, suspecting a water leak in her home, Ms. Wagner had her property inspected. Aplt. App. 334. She was informed that a water pipe underneath the slab foundation near an exterior wall was the source of the leak. Aplt. App. 334. The parties agree that water from the leaking pipe eroded the soil underneath her home, causing settlement and cracking of the slab, which, in turn, caused drywall and flooring panels to crack. Aplt. App. 334.

On May 31, 2011, Ms. Wagner filed a damage claim with American Family. Aplt. App. 334. On June 2, 2011, an American Family adjuster inspected Ms. Wagner's home and agreed there was damage. Aplt. App. 334. However, on June 15, 2011, American Family denied Ms. Wagner's claim, citing several policy provisions including losses not covered and the earth movement and water damage exclusions. Aplt. App. 85-86. As did the parties, we set out the pertinent portions of the policy.

**PERILS INSURED AGAINST – SECTION 1**

**COVERAGE A – DWELLING AND DWELLING EXTENSION**

We cover risks of accidental direct physical loss to property described in Coverage A – Dwelling and Dwelling Extension, unless the loss is excluded in this policy.

(HO-5 (CO) Ed. 6/94, at pg. 5, Aplt. App. 42).

## LOSSES NOT COVERED

**We** do not cover loss to the property described in Coverage A resulting directly or indirectly from, or consisting of, or caused by one or more of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1.      Losses excluded under EXCLUSIONS – SECTION I.

        . . . .

3.      **Continuous or Repeated Seepage** or leakage of water or steam from within a plumbing, heating, air-conditioning or automatic fire protection sprinkler system or from within a household appliance which occurs over a period of weeks, months or years.

        . . . .

6.      **Other causes of loss:**
        a.      wear and tear, marring, scratching, deterioration;
        b.      inherent vice, latent or inherent defect, mechanical breakdown;
        c.      smog, rust, corrosion, frost, condensation, wet or dry rot;
        d.      smoke from agricultural smudging or industrial operations;
        e.      *settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;*
        f.      birds, vermin, rodents, insects or domestic animals.
        If any of these cause water or steam to escape from a plumbing, heating, air-conditioning or automatic fire protection sprinkler system or household appliance, **we** cover loss caused by the water or steam.  **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.

        **We** do not cover loss to the system or appliance from which this water or steam escaped.

        For the purposes of this provision, a plumbing system or household appliance does not include a roof drain, sump, sump pump, gutter, downspout, drain tile or attached equipment.

        . . . .

However, we do cover any resulting loss to property described in Coverage A from items 2 through 8 above, not excluded or excepted in this policy.

## EXCLUSIONS – SECTION I

. . . .

**PART A**

The following exclusions apply to Coverage A – Dwelling and Dwelling Extension, Coverage B – Personal Property, Coverage C – Loss of Use and the Supplementary Coverages – Section I. **We** do not insure for loss consisting of, or caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

(Endorsement 584C (CO) Ed 11/09, at p. 2-3, Aplt. App. 60-61) (bold in original, italics added).

1. ***Earth Movement****, meaning any loss caused by, resulting from, contributed to or aggravated by earthquake; landslide; subsidence; sinkhole; erosion; mudflow; earth sinking, rising, shifting, expanding or contracting*; volcanic eruption, meaning the eruption, explosion or effusion of a volcano. This exclusion applies whether or not the earth movement is combined with water or rain.

    **We** do cover only direct resulting loss when caused by:

    a.    fire;
    b.    explosion other than the explosion of a volcano; or
    c.    if an insured peril, breakage of glass or safety glazing material which is a part of a building.
    . . . .

9. ***Water Damage****, meaning:*

    a.    flood, surface water, waves, tidal water or overflow of a body of water, from any cause. We do not cover spray from any of these, whether or not driven by wind;

b.      water from any source which backs up through sewers or drains, or water which enters into and overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water which is drained from the foundation area; or

c.      *regardless of its source, water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.*

**We** do cover direct loss that follows, caused by Fire or Explosion.

. . . .

*However, we do cover any resulting loss to property described in Coverage A – Dwelling and Dwelling Extension not excluded or excepted in this policy.*

(HO-5 (CO) Ed. 6/94, at pg 7, Aplt. App. 44 (bold in original, italics added)).

Although the parties subsequently discussed Ms. Wagner's claim and American Family's reason for denying it, American Family continuously maintained that the damage was not a covered loss. Aplt. App. 334; see also Aplt. App. 84-95, 251-90. In a February 22, 2012 letter, American Family reiterated that the pipe beneath Ms. Wagner's home had been leaking for months, and its "policy excludes damage caused by continuous or repeated leakage." Aplt. App. 91.

Ms. Wagner filed suit in district court seeking declaratory relief and claims for breach of the insurance contract, statutory bad faith under Colo. Rev. Stat. § 10-3-1116, and common law bad faith. American Family moved for summary judgment, arguing that no breach occurred because it properly denied the claim

- 5 -

and acted reasonably in doing so.  Aplt. App. 29, 31-32.

Ms. Wagner contended that the "any resulting loss" exception at the end of EXCLUSIONS – SECTION 1 restored coverage where it would otherwise be excluded by other provisions.  The district court disagreed, noting that Ms. Wagner conceded that at least two exclusions applied: earth movement and water damage.  Aplt. App. 338; see also Aplt. App. 105-06.  The district court rejected Ms. Wagner's argument that the "any resulting loss" exception at the end of EXCLUSIONS – SECTION 1 restored coverage that would otherwise be excluded.  Aplt. App.  339-40.  Rather, the district court read the policy's plain language as excluding coverage because (1) the earth movement and water damage exclusions do not cover any loss "caused directly or indirectly" by these events, which applied to Ms. Wagner's claim; and (2) for the "any resulting loss" exception to restore coverage, the damage must result from a separate and independent covered peril.  Aplt. App. 341.  The court gave the example of gas-fed fires (covered peril) occurring after an earthquake (excluded peril).  Aplt. App. 341.

The district court also rejected Ms. Wagner's reliance on Kesling v. Am. Family Mut. Ins. Co., 861 F. Supp. 2d 1274 (D. Colo. 2012), because the damage in Kesling involved both an excluded and a covered peril and invoked a different policy exclusion.  Aplt. App. 342-43.  Accordingly, the district court determined that American Family did not breach the contract by excluding coverage, and

because breach was an essential element of all Ms. Wagner's claims, her remaining claims also failed. Aplt. App. 343-44.

## Discussion

Ms. Wagner argues that the district court erred because (1) any ambiguity as to covered losses should be construed in her favor; and (2) her statutory and common law bad faith claims remain, regardless of the district court's conclusion on breach. Aplt. Br. 9. For the following reasons, we disagree.

We review an order granting summary judgment de novo. Helm v. Kansas, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Given a material issue, we view the evidence and reasonable inferences in the light most favorable to the nonmoving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). However, when the relevant facts are undisputed, we review the district court's interpretation of an insurance contract de novo. Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Contract interpretation is a matter of state law; thus, when sitting in diversity, we look to the law of the forum state. Id.

A.    Breach of Contract

Under Colorado law, Ms. Wagner is correct that ambiguous insurance

contracts are construed against the insurer and in favor of providing coverage. See, e.g., Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 613 (Colo. 1999). However, in the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. Nat'l Cas. Co. v. Great Sw. Fire Ins. Co., 833 P.2d 741, 744 (Colo. 1992). That is the case here.

Ms. Wagner's primary argument is that an "inherent conflict" exists between the earth movement exclusion, which excludes coverage of her claim, and the "settling exclusion" found under LOSSES NOT COVERED, 6(e), which covers losses caused by water when settling causes "water or steam to escape from a plumbing . . . system." Aplt. Br. 17. In support, she contends that (1) the exception to the settling exclusion provides a clear grant of coverage without referencing any other policy exclusions or limitations, and that her interpretation of coverage under this provision was confirmed by an American Family sales agent; and (2) American Family presented no evidence to rebut that the damage to her house comes under the exception to the settling exclusion due to either wear-and-tear, deterioration, defect, or a mechanical breakdown of the leaking pipe. Aplt. Br. 18, 21-23. Alternatively, Ms. Wagner argues that (3) under the earth movement exclusion, any ambiguity as to whether the "any resulting loss" provision restores coverage should have been interpreted in her favor, based on (a) Kesling, 861 F. Supp. 2d at 1274, and (b) the clear grant of coverage under the exception to the settling exclusion. Aplt. Br. 19-21.

American Family argues that this court should not address Ms. Wagner's arguments relating to the settling exclusion because they were not raised before the district court and therefore were not preserved. Aplee. Br. 14. Ms. Wagner argues that the preservation rule is more relaxed when the arguments are legal and a fundamental miscarriage of justice would occur. Aplt. Reply Br. 8. We decline to exercise our discretion in addressing Ms. Wagner's settling-exclusion arguments, particularly where the district court noted that Ms. Wagner did not argue that restoration of coverage occurred notwithstanding the earth movement exclusion. Aplt. App. 344. In sum, plain error did not occur, see Somerlott v. Cherokee Nation Distributors, Inc., 686 F.3d 1144, 1148 (10th Cir. 2012), and our declining to address these newly raised arguments will not result in a miscarriage of justice given the clarity of the policy. See In re C.W. Mining Co., 625 F.3d 1240, 1246 (10th Cir. 2010).

As to Ms. Wagner's third argument, no ambiguity exists in the earth movement exclusion that should be read in her favor. While Ms. Wagner is correct that the Kesling court interpreted "any resulting loss" against the insurer to mean any resulting damage to the home, Kesling, 861 F.Supp. 2d at 1284, we need not reach the "any resulting damage" provision. The damage here comes squarely under the earth movement exclusion. We also note that under Kesling, the ambiguity in "any resulting loss" would not end the inquiry. The next step is to determine whether the loss is subject to some other policy exclusion or

exception. Id. Ms. Wagner presents no other policy exception that would restore coverage to her claim.

B.      Unreasonable Delay

Ms. Wagner argues that regardless of whether her claim is covered by her policy, American Family remains liable for its unreasonable delay and denial of her claims in violation of Colo. Rev. Stat. §§ 10-3-1115, 1116 and common law. Aplt. Br. 23. We disagree.

In Colorado, the statutory and common law bad faith claims relating to insurance are similar. By statute, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). Similarly, to support a common law bad faith claim, a claimant must show that an "insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable or recklessly disregards the fact that the conduct is unreasonable." Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1275 (Colo. 1985). The legal standard between the two is slightly different: In the statutory claim, the only element at issue is whether the insurer denied benefits without a reasonable basis; whereas, a common law claim must show both unreasonableness and that the insurer knew that its conduct was

unreasonable or recklessly disregarded that fact.  Vaccaro v. Am. Family Ins. Grp., 275 P.3d 750, 760 (Colo. App. 2012) (as modified on denial of reh'g (Mar. 15, 2012)).

Although Ms. Wagner is correct that in Colorado "the tort of bad faith depends on the conduct of the insurer regardless of the ultimate resolution of the underlying compensation claim," Brodeur v. Am. Home Assurance Co., 169 P.3d 139, 147 (Colo. 2007), Ms. Wagner's bad faith claims nonetheless fail based on the element of reasonableness.  In essence, Ms. Wagner argues that American Family failed to investigate her claim in good faith, failed to explain the basis for its denial, and improperly denied coverage of her claim.  Aplt. Reply Br. 20-21. We have already determined that Ms. Wagner's claim was properly denied based upon exclusions in the policy which were fairly applied.  An American Family adjuster inspected Ms. Wagner's home on June 2, 2011, just days after she made her May 31, 2011 claim, and then issued a denial letter on June 15, 2011, citing several policy exclusions—even if Ms. Wagner disagreed with those exclusions during subsequent discussions.  We find nothing unreasonable about American Family's denial of her claim because it had a reasonable basis for its action.  See Vaccaro, 275 P.3d at 759 (reasonableness may be decided as a matter of law when there are no genuine issues of material fact); see also Zolman v. Pinnacol Assurance, 261 P.3d 490, 497 (Colo. App. 2011) ("[A]n insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or

failed to pay a claim without a reasonable basis.").

Although the district court summarily stated that breach was an element of all of Ms. Wagner's claims, we may affirm on any ground supported by the record. Thigpen v. Roberts, 468 U.S. 27, 29-30 (1984). Ms. Wagner failed to meet a required element of both her bad faith claims because American Family acted reasonably in denying coverage under her homeowner's policy. See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co., 558 F.3d 1184, 1192-93 (10th Cir. 2009).

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge