**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

U.S. SPECIALTY INSURANCE
COMPANY,

     Plaintiff Counter Defendant -
Appellee,

v.

ESTATE OF JOHN CHARLES EARLEY,
JR.,

     Defendant Counterclaimant -
Appellant.

No. 16-1291
(D.C. No. 1:15-CV-01590-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH** and **MORITZ**, Circuit Judges.
_____

John Earley, Jr. was the named insured on an aircraft insurance contract (the

Policy) with U.S. Specialty Insurance Company (U.S. Specialty). Earley and Michael

Schlarb died during an instructional flight when an aircraft listed in the Policy crashed

shortly after takeoff. U.S. Specialty sought a declaratory judgment that the Policy doesn't

cover any potential claims arising from the crash. The district court granted summary

judgment in favor of U.S. Specialty and against Earley's estate (the Estate). The Estate

_____

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

appeals. Because we agree with the district court that the Policy excludes coverage, we affirm.

## BACKGROUND

U.S. Specialty issued the Policy to Earley to insure three aircraft he owned. The aircraft at issue is a 1944 North American P-51D Mustang. Because the Mustang's design and features are relevant to the coverage issue, we briefly describe them here.

The Mustang was originally built as a single-seat aircraft. Before Earley bought the Mustang, its prior owners modified it to (1) add a second, rear seat and (2) add limited controls to the rear seat: a control stick, rudder pedals, and a throttle control. According to one of the Estate's experts, such modifications are common in Mustangs because they allow an experienced pilot to instruct a new pilot from the rear seat. But the modifications to Earley's Mustang were limited. The rear seat didn't have access to the following controls: the landing gear; the trim; the fuel selector; the propeller pitch; the brake; the hydraulics; the starter and magneto controls; the fuel boost pump; and the electrical controls.[1]

On July 4, 2014, Earley and Schlarb took off in the Mustang for an instructional flight. Earley occupied the forward seat, and Schlarb was in the rear seat providing instruction to Earley. The Mustang crashed just moments after takeoff. Both men died on impact, and the Mustang was totally destroyed.

U.S. Specialty sought a declaratory judgment that the Policy doesn't cover any potential claims arising from the crash. In the district court, U.S. Specialty made two

---

[1] U.S. Specialty asserted these facts in support of its motion for summary judgment, and the Estate doesn't dispute them.

2

arguments relevant to this appeal. First, U.S. Specialty argued that the Policy prohibited Earley from receiving instruction in the Mustang. Second, U.S. Specialty asserted that Earley was the pilot flying the aircraft at the time of the accident—another violation of the Policy's provisions.

The district court agreed with U.S. Specialty on both grounds and granted summary judgment in its favor. The Estate appeals.

## DISCUSSION

We review the district court's decision granting U.S. Specialty's motion for summary judgment de novo, applying the same legal standard as the district court and viewing the evidence in the light most favorable to the Estate. *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1196 (10th Cir. 2015). Colorado law controls in this diversity action. *See Hous. Gen. Ins. Co. v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.").

The district court first concluded that the crash isn't covered because Earley—who isn't listed in the Policy as an approved pilot for the Mustang—was operating the aircraft. We agree.

The Policy provision that controls this issue is the "PILOT ENDORSEMENT." App. vol. 1, 38 (emphasis omitted). The relevant portion of the endorsement states:

9. THE PILOT FLYING THE AIRCRAFT
The aircraft must be operated in flight only by a person shown below who must have a current and proper (1) medical certificate and (2) pilot certificate with necessary ratings as required by the FAA for each flight. There is no coverage under the policy if the pilot does not meet these requirements.

   A. WITH RESPECT TO AIRCRAFT N1451D – NORTH AMERICAN P-51D [MUSTANG] (LIMITED):

     1. MIKE SCHLARB,
Must be trained and signed off as qualified to act as PIC by a CFI[2] approved by us[.]

     2. VLADO LENOCH

*Id.* (emphases omitted). The effect of the endorsement is plain: if the Mustang was "operated in flight" by someone other than Schlarb or Lenoch, "[t]here is no coverage under the policy." *Id.* "In flight" is a defined term, meaning "when the aircraft movement begins for takeoff until completion of the landing run." App. vol. 1, 78 (emphases omitted). But the Policy doesn't define the term "operated." Thus, this dispute turns on whether Earley "operated" the Mustang during the fatal flight.

The record contains no evidence showing whether Earley or Schlarb—or both—touched any particular set of controls during the flight. But it is undisputed that Earley occupied the forward seat throughout the flight. Accordingly, the only question is whether Schlarb could have operated the Mustang from the rear seat. Because the Policy doesn't define "operated," the district court applied Colorado

---

[2] The Policy doesn't define these acronyms; the Estate asserts that PIC means pilot in command and that CFI means certified flight instructor.

4

law[3] and consulted a dictionary to give that term its ordinary meaning: "[to] control the functioning (of a machine, process, or system)." App. vol. 3, 328 (citation omitted). The Estate doesn't contest this definition, and we adopt it for the purpose of this appeal.

Relying on that definition, we conclude that Earley operated the Mustang in flight because he was the only pilot with access to all of the controls and instruments needed to "control the functioning" of the Mustang. *Id.* In the district court, U.S. Specialty argued that "the rear seat passenger in this aircraft, given the lack of access to the critical controls . . . cannot be the pilot flying the aircraft, or operating the aircraft in flight." App. vol. 1, 108. To support that assertion, U.S. Specialty submitted an expert affidavit from Lee Lauderback that identified 24 controls and instruments that are the "most critical of the flight controls and instrumentation required to fly a Mustang." *Id.* at 129. Only three of those 24 are accessible from the rear seat.[4] Lauderback also provided a checklist of all operations required to carry out a complete flight in the Mustang. The pilot in the forward seat has the sole ability to conduct the vast majority of those operations.

---

[3] "[W]hen faced with terms in an insurance policy that are not defined, [Colorado law] dictates that such terms be given their plain, ordinary meaning . . . ." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 306 (Colo. 2003) (quoting *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 617 (Colo. 1999)).

[4] Although Lauderback identified only two accessible controls, one of the Estate's experts asserted in his affidavit that a third set of controls—the flaps—is accessible from the rear seat. Because we view the evidence in the light most favorable to the Estate, *see Zisumbo*, 801 F.3d at 1196, we credit its expert's assertion.

The Estate didn't dispute those facts below, and the district court properly credited them. *See* Fed. R. Civ. P. 56(e)(2); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). On appeal, the Estate acknowledges that "U.S. Specialty took the position [in the district court] that no one can 'pilot' the P-51 Mustang from the rear seat, which the district court ultimately adopted." Aplt. Br. 21. In response, the Estate asserts that its two expert affidavits "are in direct conflict with that position." *Id.* Not so. The relevant portions of the Estate's expert affidavits state that it's possible to serve as "pilot in command" from the rear seat—a designation that is irrelevant to this coverage issue, as we explain below. *See, e.g.*, App. vol. 3, 268 ("I serve as the pilot-in-command when I am in the rear seat, even when the plane belongs to the pilot in the front seat."). But the Estate's experts never disputed the premise that the rear-seat occupant can't personally control most of the Mustang's critical functions.[5]

We're also persuaded by the Federal Aviation Administration's (FAA) requirements for converted, two-seat P-51D Mustangs. The FAA was required to approve the Mustang's conversion before it could return to service. *See* 14 C.F.R. §§ 43.5, 43.9. For this particular conversion, the FAA indicated that its "approval is valid only if [the] aircraft is placarded to be flown from [the forward] seat only." App. vol. 1, 150 (capitalization altered). This requirement is consistent with

---

[5] The Estate maintains that "Schlarb had access to the same controls necessary to perform the takeoff (throttle, rudder pedals, and yoke)." Aplt. Br. 23. But the Estate cites no record evidence confirming that no other controls are necessary for takeoff, and Lauderback's affidavit contradicts this assertion. Moreover, the Policy required Schlarb to operate the Mustang throughout the flight—not only during takeoff.

Lauderback's assertion that only the forward seat contains all the controls and instruments necessary to operate the Mustang during its flight.[6]

On appeal, the Estate never seriously disputes this premise. Instead, the Estate argues for an entirely different interpretation of the Pilot Endorsement. That endorsement alters "Item 9" in the Policy, which has a heading titled "THE PILOT FLYING THE AIRCRAFT." App. vol. 1, 38. The Estate argues that this phrase is actually a substitute for the term "pilot in command."[7] Aplt. Br. 17. And based on its assertion that Schlarb was the pilot in command, the Estate argues that Schlarb was also the pilot flying the aircraft.

The Estate offers several reasons why we should construe "the pilot flying the aircraft" to mean "the pilot in command." But we decline to discuss these reasons because the Estate's argument is based on a flawed premise: that the phrase "the pilot flying the aircraft" has any controlling effect on the coverage issue. It doesn't. That phrase is simply a heading; the operative language immediately follows it: "The aircraft must be operated in flight only by a person shown below . . . . There is no coverage under the policy if the pilot does not meet these requirements." App. vol. 1, 38

---

[6] The Estate argues that the placard requirement applies only to solo flights—i.e., if there's only one pilot on board, the pilot must be in the front seat. The Estate's only support for this interpretation—which is narrower than the placard's actual language—is its expert's testimony. *See* Aplt. Rep. Br. 14 ("Jackson . . . makes clear that this placard only applies to solo flying."). But we see no statement in Jackson's affidavit to that effect, and the Estate doesn't cite a specific paragraph of his affidavit.

[7] "Pilot in command" is an FAA designation. The pilot in command "(1) [h]as final authority and responsibility for the operation and safety of the flight; (2) [h]as been designated as pilot in command before or during the flight; and (3) [h]olds the appropriate category, class, and type rating, if appropriate, for the conduct of the flight." 14 C.F.R. § 1.1.

(emphasis omitted). The Estate argues that the district court erred by "determin[ing] that the 'pilot flying the aircraft' meant the person who 'operated' the aircraft." Aplt. Br. 23. To the contrary, that's exactly what the Policy states. And for the reasons we've already discussed, only the forward-seat occupant—Earley—could have "operated" the Mustang.

Finally, the Estate argues that our reliance on the term "operated," instead of the "pilot in command" concept, creates a fact issue that precludes summary judgment. Specifically, the Estate argues that there's no record evidence showing "which deceased pilot had [his] hands on a particular flight control at a certain point in time." Aplt. Br. 23. But our conclusion doesn't rely on that knowledge. Instead, it relies on the undisputed fact that Earley sat in the forward seat throughout the flight and, based on a standard definition of the term "operate[]," only the forward seat contained all the controls and instruments necessary to operate the Mustang throughout the flight. App. vol. 1, 38. Accordingly, no factual issues preclude summary judgment.

Because we affirm the district court's order granting summary judgment based on the Pilot Endorsement, we need not consider its alternative conclusion that the Policy prohibited Earley from receiving instruction in the Mustang.

Entered for the Court

Nancy L. Moritz
Circuit Judge

8