FILED
United States Court of Appeals
Tenth Circuit

**July 13, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AUTO-OWNERS INSURANCE
COMPANY, a Michigan corporation,

     Plaintiff - Counter-Defendant -
Appellee,

v.

GEORGE FLEMING, an individual;
JANIS FLEMING, an individual,

     Defendants - Counterclaimants -
Third-Party Plaintiffs - Appellants,

v.

CHARTER OAK FIRE INSURANCE
COMPANY, a Connecticut corporation,

     Third-Party Defendant - Appellee,

and

TIMBERSMITH, INC., a Utah
corporation,

     Defendant.

No. 16-4118
(D.C. No. 2:12-CV-00786-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **MORITZ**, Circuit Judges.
_____

     [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

George and Janis Fleming appeal a district court order granting summary judgment to The Charter Oak Fire Insurance Company ("Charter Oak") and Auto-Owners Insurance Company ("Auto-Owners"). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

The parties are familiar with the facts of this case, which we do not recite in detail. The Flemings hired Timbersmith, Inc. in 2008 to build a residential property in Utah. During construction, LC Builders, Inc., working with Timbersmith, incorrectly framed the house, and both Timbersmith and LC Builders ultimately abandoned the project before construction was completed. The Flemings filed a state-court action against LC Builders and an arbitration action against Timbersmith, asserting various claims for negligence and breach of contract. The Flemings prevailed in both actions and were awarded $1,113,780.63 against LC Builders and $1,109,642.50 against Timbersmith. The owners of both companies filed for bankruptcy before satisfying the judgments against them.

During the relevant period, LC Builders was insured by Charter Oak and Timbersmith was insured by Auto-Owners. Charter Oak was made aware of the litigation against LC Builders but determined that its policy did not cover the alleged damages. Accordingly, it declined to defend LC Builders. The parties dispute whether Auto-Owners received adequate notice of the arbitration proceedings against Timbersmith. However, after final judgment was entered, the Flemings contacted Auto-Owners and requested payment on behalf of Timbersmith. Auto-Owners

2

subsequently filed this declaratory judgment action against Timbersmith and the Flemings in state court, asserting that it had no duty to defend or indemnify Timbersmith against the Flemings' claims. After removing the case to federal court on the basis of diversity jurisdiction, the Flemings filed a counterclaim against Auto-Owners and a third-party complaint against Charter Oak, arguing that both insurance companies are obligated to pay the judgments against their insured. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of Charter Oak and Auto-Owners. The Flemings timely appealed.

## II

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Yousuf v. Cohlmia, 741 F.3d 31, 37 (10th Cir. 2014). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this is a diversity action, we apply the substantive law of the forum state, Utah. Signature Dev. Cos. v. Royal Ins. Co. of Am., 230 F.3d 1215, 1218 (10th Cir. 2000).

## A

The Flemings argue that because Charter Oak and Auto-Owners breached their respective duties to defend LC Builders and Timbersmith, they are now estopped from challenging coverage. In rejecting this argument, the district court determined the insurance companies are entitled to contest coverage under Utah law because the issue was not adjudicated in the prior litigation. We agree.

3

Utah law provides that, "as a general rule[,] when an insurer, whose policy requires it to defend its insured, receives notice of a suit against [the insured] and is allowed an opportunity to defend, but refuses, [the insurer] is bound by the findings and judgment therein." McCarty v. Parks, 564 P.2d 1122, 1123 (Utah 1977). However, this general rule "does not extend to matters collateral or immaterial to the essential issues involved in the case, but is limited to those necessary to determination of the controversy between the immediate parties." Id. Thus, an insurer whose liability for a judgment was not litigated or necessarily decided "should be afforded an opportunity to raise and have determined the issue as to its own liability, so long as doing so is not inconsistent with the findings on material issues which were determined between the plaintiff and defendant." Id. These principles were recently reaffirmed by the Utah Supreme Court. See Speros v. Fricke, 98 P.3d 28, 31, 34-39 (Utah 2004) (holding that insurer had "forfeited its opportunity to dispute the underlying facts" giving rise to insured's liability by breaching duty to defend, but considering insurer's argument challenging policy coverage (emphasis added) (citing McCarty, 564 P.2d at 1123-24)).[1]

---

[1] The Flemings' citation to Summerhaze Co., L.C. v. Federal Deposit Insurance Corp., 332 P.3d 908 (Utah 2014), does not alter our interpretation of Utah law. The issue presented in that case was whether the court had subject matter jurisdiction over the plaintiffs' claims, despite their failure to exhaust administrative remedies. Id. at 911. The plaintiffs asserted that the administrative claims review process did not apply because the agency had "tendered defense of the claim[s] to BancInsure and thus lost authority to resolve the claims." Id. at 920. It was in rejecting this argument—and considering the effect of a tender of defense on the rights of the agency—that the Utah Supreme Court discussed estoppel and an insurer's duty to defend. See id. at 920-21. However, that discussion was only

4

The underlying litigation between the Flemings and the construction companies addressed the companies' liability for negligence and the damages owed. "[T]here was no necessity for any adjudication as to whether" the damages were covered under the relevant insurance policies. McCarty, 564 P.2d at 1123. Accordingly, neither insurer is estopped from challenging coverage.[2]

**B**

We must next consider whether the Charter Oak or Auto-Owners insurance policies (collectively, "Policies") provide coverage for the damage awards against LC Builders and Timbersmith. The district court concluded that neither Policy applies. Again, we agree.

Under Utah law, "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993); see also Houston Gen. Ins. Co. v. Am. Fence Co., 115 F.3d 805, 806 (10th Cir. 1997) (interpretation of insurance contract governed by state law). The parties do not contend that any provisions in the Policies are ambiguous. Thus, there is no

---

intended to provide context to the jurisdictional analysis and was not necessary to the ultimate resolution of the case. Such dicta should not be taken to overrule the express holdings of McCarty and Speros, which were not cited. Cf. Alexander v. Sandoval, 532 U.S. 275, 282 (2001) (the court "is bound by holdings, not language").

[2] Our conclusions on this and on the issue of coverage, infra, obviate the need to address whether Auto-Owners received adequate notice of the arbitration against Timbersmith or whether either insurer breached its duty to defend.

presumption in favor of the insured, and "the policy language is construed according to its usual and ordinary meaning." <u>Alf</u>, 850 P.2d at 1274.

Both Policies are Commercial General Liability ("CGL") policies with substantially similar coverage.[3]  The Policies cover "property damage" caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  "[A]ccident" is not further defined by the Policies.  However, Utah law has consistently construed the term in the insurance policy context as being

> descriptive of means which produce effects which are not their natural and probable consequences. . . .  An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means.  It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.

<u>N.M. ex rel. Caleb v. Daniel E.</u>, 175 P.3d 566, 569 (Utah 2008) (quotation omitted).

Under this definition, "harm or damage is not accidental if it is the natural and probable consequence of the insured's act or should have been expected by the insured." <u>Id.</u> (footnote omitted).

Applying Utah law, this court has previously determined that "the natural results of an insured's negligent and unworkmanlike construction do not constitute an occurrence triggering coverage under a CGL policy." <u>Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.</u>, 618 F.3d 1153, 1174 (10th Cir. 2010) (brackets and quotation omitted); <u>see also</u> <u>Farmington Cas. Co. v. Duggan</u>, 417 F.3d 1141, 1142 (10th Cir.

---

[3] The one substantive difference between the Policies, which relates to the "your work" coverage exclusion, does not affect the outcome of this appeal.

2005) ("Most policies of [CGL] insurance exclude the insured's faulty workmanship from coverage. The rationale for such exclusions is that faulty workmanship is not an insurable 'fortuitous event,' but a business risk to be borne by the insured." (quoting Lee R. Russ & Thomas F. Segalla, 9 Couch on Insurance § 129:11 (3d ed. 1995 & Supp. 2005))).[4] Two exceptions to this general rule might exist "where defective workmanship causes damage to property other than the work product itself," Cincinnati Ins. Co. v. AMSCO Windows, 921 F. Supp. 2d 1226, 1260 (D. Utah 2013), or where damage is caused by "the negligent acts of [the insured's] subcontractors," Great Am. Ins. Co. v. Woodside Homes Corp., 448 F. Supp. 2d 1275, 1281 (D. Utah 2006).[5]

Pursuant to these rules, we conclude the Flemings have failed to provide sufficient evidence that the judgments against LC Builders and Timbersmith include a covered "occurrence" under the Policies. The Flemings allege only faulty

---

[4] To the extent the Flemings disagree with this reading of Utah law, we are "bound by our own prior interpretations of state law," absent "an intervening decision of the state's highest court." Kokins v. Teleflex, Inc., 621 F.3d 1290, 1295 (10th Cir. 2010) (quotation omitted).

[5] The Utah Supreme Court has not directly addressed whether these two scenarios constitute an "occurrence" under a CGL policy. In diversity cases, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003). Both Cincinnati Insurance Co. and Great American Insurance Co.—District of Utah cases—predicted that Utah courts would likely endorse a definition of "occurrence" that includes damage to property other than the work product itself or damage caused by a subcontractor's negligence. See 921 F. Supp. 2d at 1260; 448 F. Supp. 2d at 1281. Because the Flemings have failed to demonstrate a coverable occurrence even applying such a definition, we will assume without deciding that these are accurate predictions.

7

construction causing damage to the insureds' own work. There are no allegations in the pleadings, nor factual findings in the final judgments against the insured, that the "defective workmanship cause[d] damage to property other than the work product itself." Cincinnati Ins. Co., 921 F. Supp. 2d at 1260.[6] The Flemings' vague assertions, without citations to record evidence, that LC Builders and Timbersmith caused "latent defects" or "dangerous," "unsafe," and "hazardous" conditions in the home are insufficient to demonstrate coverage. MacKenzie v. City & Cty. of Denver, 414 F.3d 1266, 1273 (10th Cir. 2005) ("Unsupported conclusory allegations . . . do not create an issue of fact.").

Further, the Flemings have failed to present evidence that any of the faulty workmanship was performed by subcontractors of Timbersmith or LC Builders. In the arbitration petition against Timbersmith, the Flemings expressly alleged that Cory Lowder—owner of LC Builders—worked on their home as an employee of Timbersmith. They now reverse course and assert that Lowder and LC Builders were Timbersmith's subcontractors. However, they offer no record evidence supporting this contention or rebutting the substantial evidence provided by defendants confirming Lowder and LC Builders' employee status. Accordingly, the Flemings have failed to demonstrate a genuine dispute of fact on this issue.

---

[6] The district court noted evidence that part of the foundation had to be chiseled out to move piping that was incorrectly placed due to defective framing. The Flemings argued below that this evidence was irrelevant and inadmissible. To the extent they now assert this is admissible evidence demonstrating coverage, we decline to consider the argument as it was addressed only summarily in their reply brief. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

There is a similar lack of evidence that LC Builders' defective work was performed by subcontractors. The Flemings did not allege in their state-court complaint that LC Builders employed any subcontractors, and although the final judgment against LC Builders cursorily concluded that LC Builders and "their sub-contractors" were negligent, the issue was immaterial to a determination of LC Builders' liability in those proceedings. See McCarty, 564 P.2d at 1123. Even assuming we are bound by the court's statement, the Flemings have failed to specify which portions of the work were performed by LC Builders and which were performed by a subcontractor on LC Builders' behalf, making it impossible for us to determine what—if any—damage might be covered.

As the party asserting a loss under an insurance policy, the Flemings have the burden of demonstrating coverage. See Utah Farm Bureau Ins. Co. v. Dairyland Ins. Co., 634 F.2d 1326, 1328 (10th Cir. 1980); Cincinnati Ins. Co., 921 F. Supp. 2d at 1233. They have failed to do so.[7]

### III

For the foregoing reasons, the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[7] In light of this conclusion, we need not address whether the Policies' coverage exclusions would also bar the Flemings' recovery.